18858

Etrulia B. GAMBRELL, as Administratrix of the Estate of Lester Edwin Gambrell, Respondent v. James B. BURLESON and Miriam S. Burleson, Appellants.

(165 S. E. (2d) 622)

*Messrs. J. Calhoun Pruitt,* of Anderson, and *J. D. Todd, Jr.,* of Greenville, *for Appellants,*

*Messrs. Watkins, Vandiver, Kirven, Long & Gable,* of Anderson, *for Respondent,*

January 15, 1969.

LITTLEJOHN, Justice.

This is an action seeking damages under the survival act for pain, suffering, medical expense, etc. alleged to have been sustained by Lester Gambrell prior to his death as the result of an automobile collision. Defendant James Burleson drove an automobile owned by his wife, defendant Miriam Burleson, into the rear and right side of Gambrell's parked automobile in which he was sitting at the time. The Collision occurred on July 23, 1963, and Mr. Gambrell died of cancer on May 19, 1964.

The defendants in their answer admit the collision but deny all allegations of negligence and damage.

On the trial of the case the plaintiff contended (and it is now uncontested) that at the time of the collision Gambrell had a dormant cancer of the nasopharynx, that the cancer was aggravated or accelerated by the collision and that consequently the defendant was liable for damages resulting from such acceleration. The contention is that the trauma associated with the collision caused cells on what was then a localized tumor to break off and spread over the body by means of the blood or lymph system thereby hastening Gambrell's death and causing pain and suffering and medical expense incident thereto.

The plaintiff presented two medical experts to testify

relative to the relation between the collision and the development of Gambrell's complications.

Dr. Thomas Nation, a pathologist, testified: "I believe it is possible that trauma involving the neck or head could have initiated, or caused metastasis, or spread a malignant tumor." Dr. Frank Wrenn, a neurosurgeon, testified that "there is a reasonable probability that the spread could have occurred as a result of the trauma."

Defense counsel objected to consideration of this testimony, submitting that the medical expert testimony on causation did not meet the "most probably" rule. The trial judge admitted the testimony. The jury found for the plaintiff.

By this appeal defendants submit two questions to this court: (1) Did the lower court err in permitting medical witnesses to give opinion testimony (as recited above) as to the relationship between accident and injury over the objections of the defendants? and (2) Was there any competent evidence to allow the jury to pass upon the question of causal connection between the accident and the cancer from which Gambrell suffered subsequent to the accident and prior to his death?

We will rule on the first question prior to considering the second so far as to indicate the totality of the evidence as it affects question number 2.

Where one relies upon medical testimony alone to show a causal connection between an injury and a subsequent condition, the testimony must meet the "most probably" rule, and it is not sufficient that the malady in question "possibly" or "could have" or "might have" resulted from the injury. See *Cross v. Concrete Materials,* 236 S. C. 440, 114 S. E. (2d) 828 (1960) and the numerous cases cited therein.

Where the plaintiff does not, as here, rely solely on the opinion testimony of medical experts to establish the causal connection, the aforementioned rule has

not been strictly applied. We held similiar testimony admissible in *Grice v. Dickerson, Inc.,* 241 S. C. 225, 127 S. E. (2d) 722 (1962). Even though the testimony is not sufficient to meet the "most probably" rule we hold the same admissible.

In order to determine if there was competent evidence ■ to submit to the jury on the question of causal connection between the collision and the cancer it is necessary to review all the evidence, which will be done in the light most favorable to the plaintiff as is required under our rule.

On July 23, 1963, Gambrell was sitting under the steering wheel of his Oldsmobile which was parked alongside a curb on the left side of the street near a barber shop. His co-worker, Bozeman, was in the car also. The Oldsmobile was struck at the right rear and was knocked over the curb for a distance of 15 feet. Gambrell had been working regularly and was in what appeared to be good health, though it is now admitted that he had at that time cancer of the naso-pharynx. It was back of the nose, above the throat and well protected by boney structure. After the collision Gambrell and Bozeman went to the office of the insurance company for which they worked and procured Bozeman's automobile and drove to the emergency room of the Anderson Memorial Hospital. There he was seen by Dr. Hinnant. He complained of pain in the back of his head and in the back of his neck and in the lower part of the back near the belt line. The doctor noted pain when he attempted to move his neck. X-rays were made which showed no fracture. There were no bruises, contusions or marks or cuts observed.

An opticopupillary examination was made. Dr. Hinnant testified:

"The purpose of making this examination on a patient who is complaining of headache, a headache post-trauma case, is to see if there is any evidence of hemorrhage deep in the eye, on the posterior wall of the eye, where you can

visualize the blood vessels, and you can see if there has been any hemorrhage in these blood vessels, which signifies that there has been some damage to the interelements of those things which are contained within the boney calvaria area."

The result was negative and no such injuries were found. He prescribed relaxants and narcotics for pain. This doctor did not see Gambrell again, but he was given ultra-sound treatment for pain on July 24, 25, 26 and 30.

Dr. Gaillard (Dr. Hinnant's partner) examined Gambrell on July 30. The patient reported that he was better and the doctor prescribed more relaxants and pain medicine.

On August 15, Gambrell returned to Dr. Gaillard's office complaining of headache and that the left side of his face was numb and sore. The doctor's examination revealed nothing unusual except the subjective complaints which were reported. Cortisone was prescribed.

Gambrell returned to the doctor's office on August 27, complaining of pain in the back and in the right side. There were no complaints of numbness of the face.

On September 3, he came again, reporting that his left ear seemed stopped up and there was numbness to the left side of the face. He had an inflamed ear drum for which sulfur was prescribed. Additional ultra-sound treatments for his back were given September 3, 4, 5 and 6.

On September 10, Gambrell went to see Dr. Sam Ross, an eye, ear nose and throat specialist, complaining of poor hearing in his left ear. The doctor found an ear drum that was thick and very dark, with fluid in the middle area. He did not know the cause, but he did know there was some disturbance. He sprayed his nose and inflated the ear with air. Gambrell returned to Dr. Ross' office with the same complaint on September 12 and 19 and 26, and on October 3 and 17. The patient seemed improved on October 17, but Dr. Ross referred him to Dr. Warder in order to get an additional opinion.

After September 3, Dr. Gaillard did not see Gambrell again until November 21, when he complained of soreness in the back of his chest and in his back. Additional ultrasound treatments were ordered. On November 27, he returned to Dr. Gaillard complaining of a lump on the side of his throat. It was an enlarged lymph node.

On November 29, Gambrell went to see Dr. Warder who found a kernel on his left neck. X-rays were made, and on December 4, it was definitely determined that he had a malignant nasopharyngioma, which is another name for cancer or a malignant tumor.

After this, Gambrell worked occasionally through January. After that time the decline in his health was rapid such that he became incapacitated, paralyzed, lost much weight and died May 19, 1964.

After the collision he worked for two or three weeks for the same insurance company and then transferred to Shell Homes as manager. His wife testified that he worked during the fall but not any after January. She said that he "couldn't work all of the time, maybe working two or three days out of a week. * * *"

\* \* \* \* \* \*

"Well, I couldn't say for sure, but I know he didn't work regularly after the accident."

In addition to the two doctors who testified as quoted above, six other physicians also testified. Drs. Davis and Meredith, both radiologists, and Dr. Warder, an eye, ear, nose and throat specialist, were definitely of the opinion that there was no connection between the collision and the spread of the cancer. Drs. Ross, Hinnant and Gaillard were not asked to testify on this point.

It was the testimony of Dr. Gaillard that this whiplash injury was moderate to severe and should normally clear up in from one to three months.

The question before us may be stated thus: Is the circumstantial evidence plus the medical evidence that the trauma could possibly have aggravated the cancerous condition sufficient to create a factual issue of causation?

It is conceded by counsel for the plaintiff that there is no expert opinion testimony which meets the "most probably" requirement enunciated in *Cross, supra,* but it is contended that the facts established by non-opinion testimony are such as give rise to a reasonable inference of causal connection. The plaintiff argues in substance that the present case is controlled by *Grice v. Dickerson, Inc. supra,* wherein circumstantial evidence of causation in the form of evidence that rheumatoid arthritis which did not previously exist developed shortly after the traumatic injury and within one week after surgery was held to be sufficient evidence of causation to permit the case to go to the jury.

This argument has been weighed carefully by this court, for certainly there are important parallels between the two cases. In both instances a plaintiff appearing to enjoy normal health is injured and subsequently develops painful and serious ailments. In both instances the medical opinion testimony on causation fell short of the "most probably" requirement of *Cross.* In both instances the cause of the resulting condition is unknown to medical science.

We conclude, however, that there is a significant difference in the two cases. Gambrell had a dormant cancer described by the doctor as almost 100% fatal. It developed as medical science expected. In *Grice* the claimant was truly in good health prior to the accident. There is no evidence of any possible cause of the rheumatoid arthritis other than the accident. If a plaintiff is injured and several years after the injury he begins to complain of an ailment which he says resulted from the injury several years earlier, medical opinion testimony on the issue of causation is rather obviously indispensable to recovery. If on the other hand a plaintiff in

good health prior to an injury begins to complain on the day of the injury with what he claims to be a condition resulting from the injury, this fact alone may be sufficient evidence of causation, even when the only medical opinion testimony is that there is no causal connection. See *Poston v. South Eastern Construction Co.,* 208 S. C. 35, 36 S. E. (2d) 858 (1946).

Both *Grice* and the present case fall between the two extremes just described. In *Grice* the plaintiff suffered an injury on January 26, 1960, which resulted in a right inguinal hernia which was repaired by surgery on March 16, 1960. He testified that within "a week or so" after his surgery he began to get weaker and have pains over his body, particularly in his wrist and knee where swelling developed. The diagnosis of rheumatoid arthritis was made after his referral to a specialist in internal medicine apparently sometime in May, 1960.

The testimony indicates that after the collision, Mr. Gambrell proceeded to the hospital emergency room where he complained of pain in the back of the neck and head and in the lower part of the back, but that no bruises, contusions or cuts were observed. X-rays were negative, and after several days of ultra-sound treatment, the plaintiff reported to his doctor that his condition was improved. Complaints of pain and numbness in the left side of his face were perhaps the first symptoms even possibly related to the cancer in the plaintiff's nasopharynx, and according to the testimony these complaints commenced around the middle of August, 1963, almost one month after the collision. Although the plaintiff was under the constant care of several doctors, the diagnosis of cancer was not made until December 4, 1963.

The plaintiff's own witness, Dr. Nation, testified that in his opinion, if the tumor existed on July 23, 1963, as the plaintiff concedes, "I would have said that he would have been lucky to have lived a year." Mr. Gambrell in fact lived slightly less than ten months.

It is undisputed that the tumor in question was located near the center of the base of the skull structure and was well guarded by boney structure. There is no evidence that his head struck any object or that any object struck his head. The only evidence of injury to the head and neck from the collision is that Mr. Gambrell suffered a moderate to severe whiplash-type injury which apparently responded about as expected to the treatment provided.

In *Grice,* then, there was almost immediate complaint about difficulties which later proved to be symptomatic of the arthritis, and there was no evidence of a preexisting arthritic condition. In the present case the cancer was admittedly in existence at the time of the injury, and the plaintiff survived for a period of time approximately what his life expectancy allegedly would have been without any aggravation or acceleration of the cancer.

It would appear, therefore, from all the facts and circumstances, that the non-expert testimony does not so immediately and directly or naturally and probably connect the collision with the cancer as to make proof legally sufficient. There seems to be no evidence to show that the cancer acted other than one might normally expect a cancer to act, and on the contrary the testimony of the plaintiff's medical witness to the effect that Mr. Gambrell could not have been expected to live more than a year with such a tumor seems consistent with the way the cancer progressed. Without additional proof by way of medical opinion or other proof, the jury was left to surmise and conjecture.

In spite of the decedent's good health so soon before the collision, a layman of average intelligence, from his own knowledge and experience, could have no well-grounded knowledge that the collision aggravated the preexisting cancer. See *Burton v. Holden & Martin Lumber Co.,* 112 Vt. 17, 20 A. (2d) 99, 135 A. L. R. 512 (1941).

The narration of the sequence of events and the circumstantial evidence together with the testimony of the two

doctors that the wreck could possibly aggravate the existing cancerous condition does not tend to prove that the condition developed other than it was naturally expected to develop. The only reasonable inference to be drawn from the whole of the evidence is that the whiplash injury responded normally to the treatment given for it, and that the cancerous condition developed as it was expected to develop. The fact that complications followed the whiplash injury in point of time, under the circumstances recited in this case, does not warrant the conclusion that the collision accelerated or aggravated Gambrell's cancerous condition.

At the nonsuit and the directed verdict stages of the trial, counsel for the defendant submitted that any claim for damages purporting to arise out of the cancerous condition was not an element of damages to be considered by the jury. The trial judge overruled defendant's contention. We are of the opinion that the trial judge was in error and that under the evidence submitted the jury should have been charged that no damages could be awarded for the alleged aggravation or acceleration of the cancer.

Accordingly, a new trial must be held, and the case is

Reversed and remanded for a new trial.

Moss, C. J., and Lewis and Brailsford, JJ., concur.

Bussey, J., concurs in result.