## 21046

Evelyn Byrd EDWARDS, Appellant, v. PETTIT CONSTRUCTION COMPANY, INC., and Vigilant Insurance Company, Respondents.

(257 S. E. (2d) 754)

*Johnson, Smith & Hibbard,* Spartanburg, *for appellant.*

*Carlisle Bean & Hines,* Spartanburg, *for respondents.*

August 30, 1979.

RHODES, Justice:

This is an appeal from an order of the circuit court reversing an award of the South Carolina Industrial Commission to the widow of Willie S. Edwards under the Workmen's Compensation Act. S. C. Code §§ 42-1-10 to 17-90. We reverse and reinstate the award of the Commission.[1]

---

[1] The question of the dependency of any illegitimate child was reserved for further hearing.

Willie S. Edwards was employed as a brick mason by Pettit Construction Company when, on June 9, 1975, he fell from a scaffold approximately fourteen feet high, landing face down, breaking his nose, losing several teeth, and striking a twelve inch concrete block with his upper stomach or chest. Subsequent to the accident, the decedent suffered continuing severe pain in the area of his upper stomach and experienced a loss of appetite and drastic loss of weight. On December 3, 1975, he was sent by employer-carrier to Dr. G. B. Hodge who found the deceased to be suffering from excessive secretions in the stomach as well as a small, oval-shaped gastric ulcer. In 1955, the decedent had undergone a subtotal gastric resection for a bleeding ulcer that left him with no more than one-half of his stomach intact. For at least twelve years prior to the accident, however, he was not bothered with stomach complaints and had been able to work during that period in a full time capacity for Pettit Construction Company as a brick layer.

In March 1976, the decedent was admitted to Veterans Hospital where his condition was diagnosed as stomach cancer. It was concluded that the cancer was inoperable and Edwards died on July 11, 1976. A subsequent autopsy revealed that the cause of death was invasive carcinoma of an undetermined origin which had spread through the stomach and into the esophagus.

A hearing was held before a Single Commissioner who found that the decedent had suffered an injury, by accident, arising out of and in the course of his employment which aggravated a previous condition in the employee, resulting in stress, long term esophagitis and a malignant ulcer, from which he died. The Full Commission unanimously affirmed the award of the Single Commissioner. Upon appeal, the circuit court reversed, finding that the award was conjectural and speculative, being based upon testimony of Dr. G. B. Hodge which was found to be "incompetent".

Under the Workmen's Compensation Act, section 42-17-60, both this court and the circuit court are bound by the findings of the Industrial Commission if there is competent evidence to support such findings. *Dawkins v. Capital Construction Company,* 250 S. C. 406, 158 S. E. (2d) 651 (1967). Appellant contends that there is such competent evidence to support a finding that the accident suffered on the job by the decedent aggravated a preexisting condition, resulting in a fatal malignancy. While a finding of fact of the commission will normally be upheld, such a finding may not be based upon surmise, conjecture, or speculation, but must be founded on evidence of sufficient substance to afford a reasonable basis for it. *Wynn v. Peoples Natural Gas Company,* 238 S. C. 1, 118 S. E. (2d) 812 (1961).

In reversing the Commission, the circuit court held that Dr. Hodge's testimony was incompetent in that (1) an inference upon an inference was made to arrive at his conclusion; (2) there was no evidence of real stress on which to base the chain of inferences; and, (3) his trial testimony was inconsistent with its prior findings and without substantial basis.

The rule forbidding the building of an inference upon an inference is one of the many principles that may be validly applied in some instances, but does not rise to the level of a universal rule of evidence. Wigmore has rejected this principle, stating

All departments of reasoning, all scientific work, every day's life and every day's trials, proceed upon such data [inference upon inference]. The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon.

I Wigmore, Treatise on Evidence § 41 (3d ed., 1940). Many decisions of other jurisdictions indicate that when a

court seeks to apply the rule forbidding the basing of one inference upon another, what is meant is that an inference cannot be based upon evidence that is speculative or conjectural. 29 Am. Jur. (2d), Evidence § 166, at 205. Even though Dr. Hodge testified that the accident caused stress, which thereupon aggravated a pre-existing ulcer, which subsequently became malignant and ultimately caused death, such inferences are reasonable in light of the evidence presented and the fact that the causes of cancer and its nature are far from medically certain. The following quotation from *Hughes* indicates the necessity of inferences when dealing with the subject of cancer:

As in all cases of this kind, we find the doctors in harmony in this respect: That they have no certain knowledge of the origin and cause of cancer. Consequently, on this subject as related to any given state of facts, their testimony is largely based upon theory, in the light of their past study and experience.

*Hughes v. Easley Cotton Mill*, 210 S. C. 193, 197, 42 S. E. (2d) 64, 66 (1947).

The record shows that the decedent was found to have been in good health prior to the accident and yet to have rapidly declined thereafter, suffering from continued pain, nausea, and a condition of esophagitis. He had a great and sustained loss of weight commencing at the time of the accident. He was further observed to have a small gastric ulcer following the accident which was of the type, according to medical testimony, to undergo changes with chronic stress, pain, and esophagitis. This evidence and the chain of events leading to the death of the employee reasonably allowed Dr. Hodge to conclude that the accident most probably aggravated a pre-existing condition that developed into cancer. The opinion held by Dr. Hodge on the issue of causation is illustrated by the following exchange in the testimony:

THE COURT: So you would say there was—the fall aggravated a pre-existing—most probably aggravated a pre-existing condition?

A: Yes, sir.

Q: Did the aggravation of the pre-existing condition most probably cause the malignant change in the chronic ulcer?

A: The fact that he had the aggravating condition, he developed the cancer in it.

Q. If he hadn't had that aggravating condition, he most probably would not have developed the cancer?

A: That would be a fair assumption.

Furthermore, there was enough circumstantial evidence supportive of Dr. Hodge's testimony to allow the Commission to reasonably conclude that the accident aggravated the pre-existing condition. In *Grice v. Dickerson,* 241 S. C. 225, 127 S. E. (2d) 722 (1962), the medical testimony failed to show that the claimant's arthritis was "most probably" caused by the claimant's injury. Medical experts merely recognized the possibility that the traumatic injury sustained could have been a participating factor in the onset of arthritis. Thus, none of the medical testimony was sufficient to establish the requisite causal relationship. Nevertheless, the court held that the sequence of events surrounding the claimant's disease could be used in conjunction with the medical testimony to establish the requisite causal connection.

Likewise, the court in *Jeffers v. Manetta Mills,* 190 S. C. 435, 438, 3 S. E. (2d) 489, 490 (1939) stated that

where the circumstances surrounding the injury sustained by the deceased are such as to lead an unprejudiced mind reasonably to infer that it was caused by accident, the evidence need not negative all other possible causes of death.

In *Sligh v. Newberry Electric Cooperative,* 216 S. C. 401, 58 S. E. (2d) 675 (1950), the doctors stated that an

injury "could" aggravate a malignant condition or cause a cancerous condition to appear where there had been no previous knowledge of it. The court affirmed an award by the Industrial Commission, concluding as follows:

[H]ere was a man apparently in good health, a steady worker who was able to perform his daily tasks . . . who suffered an injury by accident . . ., with the commencement of a growth at the point of injury, which proved to be the deadly disease of cancer, and did not seem to have existed before, but which ran its tragic course to the inevitable end in death on July 6, 1947. Surely this constitutes a chain of circumstances of probative value tending to show that death was accelerated by the accidental injury . . . [I]t is quite true that *post hoc* does not always mean *propter hoc;* but the "sequence of events is sometimes very convincing."

*Id.* at 421, 58 S. E. (2d) at 684. As in *Sligh,* the symptoms of the cancer in the present case followed in a timely manner.

As a second basis for its reversal of the Commission's award, the circuit court found the record void of testimony of evidence of stress. However, there is testimony by Dr. Hodge both at the trial and under deposition that the decedent appeared to be in a great deal of discomfort, was tense, and that the ulcer and resulting symptoms which the decedent had suffered were due to stress. Since there was evidence of such stress, reasonable inferences could be made thereon.

Finally, the circuit court felt that the conflict and change in testimony by Dr. Hodge from an initial determination that cancer was not a cause of the disability to a finding that the cancer was a result of the accident made such testimony incompetent. This court has previously held that when there is a conflict of evidence, either of different witnesses or of the same witness, the findings of fact of the Industrial Commission, as triers of fact, are con-

clusive. *Dawkins v. Capital Construction Company, supra.* Additionally, the conclusion of the circuit court appears to be based on a mis-apprehension of the testimony. Dr. Hodge, on the basis of his initial examination of the decedent, had ruled out carcinoma in the lower third of the esophagus. The postmortem examination revealed the cause of death to have been stomach cancer which had spread to the lining of the abdominal cavity.

For the foregoing reasons, we reverse, reinstate the award of the Commission, and remand to the Industrial Commission for determination of the reserved question of dependency of any illegitimate children.

Reversed and Remanded.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.