21232

Rayford GLOVER, Appellant, v. RHETT JACKSON COMPANY OF BUSH RIVER ROAD and The American States Insurance Company, Respondents.

(267 S. E. (2d) 77)

*Donald E. Jonas,* of *Ratchford, Cooper & Jonas,* Columbia, *for appellant.*

*F. Barron Grier, III,* and *Charles E. Carpenter,* of *Richardson, Plowden, Grier & Howser,* Columbia, *for respondents.*

May 15, 1980.

GREGORY, Justice:

This is a workmen's compensation case. At issue is the alleged aggravation of a pre-existing cancerous condition by an on-the-job injury resulting in the loss of appellant Rayford Glover's left arm. The South Carolina Industrial Commission's award of compensation was reversed on appeal to the circuit court and judgment entered in favor of respondents Rhett Jackson Company of Bush River Road, Employer and the American States Insurance Company, Carrier. We affirm.

Our scope of review is the same as the circuit court's on appeal from an award of compensation by the Industrial Commission. *Edwards v. Pettit Construction Company, Inc.,* S. C., 257 S. E. (2d) 754 (1979). We are limited to a determination of whether competent evidence can be found in the record to support the commission's findings. If so, we are bound thereby. See, generally, cases collected in 19 West's South Carolina Digest, *Workmen's Compensation,* at Key Number 1939.1-11. The sole question before us is whether there is competent evidence of causation to support the commission's finding that appellant's injury aggravated an already present cancerous condition known as liposarcoma. We agree with the lower court there is none.

Appellant, a carpet mechanic employed by respondent Rhett Jackson Company, was installing carpet at a customer's home some time in April of 1975 when a stack of doors fell against his left arm. A hinge attached to one of the doors struck appellant's left bicep. He sought medical attention on the day of injury but his doctor was unavailable. Appellant returned to work. Several weeks later he noticed a hard knot on his arm in the area of his injury and was examined on August 13, 1975 at the Veterans Administration Hospital in Columbia. In September of

1975, some four months after the injury, appellant's left arm and shoulder were amputated in a radical procedure known as a forequarter amputation. Between the time of injury in April and the date of his hospitalization in August appellant continued in his employ with respondent.

A biopsy prior to surgery had revealed what the doctors expected. Liposarcoma, a relatively rare form of cancer, was quite extensively infiltrated throughout appellant's left arm and shoulder. The condition was described by the various medical experts who testified below as a malignant, slow-growing soft tissue tumor known to spread throughout the body and to recur in the same region where earlier treated. One of the experts added: "It is a very highly recurrent tumor. And no matter what you do—you will get it and it will come back."

Approximately one year before appellant was struck by the door hinge, he was seen by Dr. Edwards, an orthopedic surgeon, for diagnosis and treatment of what Dr. Edwards described as a "huge grapefruit sized mass on the left shoulder." Appellant was immediately hospitalized in preparation for the surgical removal of the mass, later determined to be liposarcoma. Dr. Edwards removed the malignancy to the extent possible short of amputation, however some of the diseased tissue could not be removed. Follow-up radiation therapy was prescribed for the remaining malignancy.

Of the four medical doctors who testified in these proceedings, none embraced the assertion of appellant that the single trauma of the door hinge striking the bicep aggravated or accelerated a then-quiescent cancerous condition. While two of the experts were familiar with the theory earlier advanced by certain prominent researchers that trauma could *possibly* relate causally to liposarcoma, none of the four were of the opinion that the single trauma here was causally related to the amputation. Unlike the case of *Glover v. Columbia Hospital of Richland County,* 236 S. C. 410, 114 S. E. (2d) 565 (1960), there is not even conflicting medical

opinion here that the injury most probably triggered or accelerated the existing sarcoma. See also, *Edwards v. Pettit Construction Company, Inc., supra.* Appellant concedes the medical evidence standing alone is insufficient as a matter of law to support an award of compensaiton. See *Gambrell v. Burleson,* 252 S. C. 98, 165 S. E. (2d) 622 (1969).

■ Appellant relies on his lay testimony and the circumstantial evidence adduced to affirm the commission's award. Where medical testimony does not meet the "most probably" test of *Gambrell,* the circumstances surrounding the injury and the events which follow are sufficient proof of causal connection if they give rise to a reasonable inference that the accidental injury aggravated the pre-existing condition. *Grice v. Dickerson,* 241 S. C. 225, 127 S. E. (2d) 722 (1962). However, where the evidence is susceptible of but one reasonable inference the question is one of law for the court, rather than one of fact for the commission. See cases collected in 19 West's South Carolina Digest, *Workmen's Compensation,* at Key Number 1939.1.

In our view, the only reasonable inference from all the evidence is that appellant's metastatic cancer ran its unfortunate but expected course by spreading through an area of appellant's body where one year before it was found to be extensively infiltrated. Not only is the consensus of the medical opinion presented in the record adverse to appellant's claim, the circumstances themselves work against him. It is undisputed that liposarcoma spreads and recurs. There is no question that one year prior to the injury a grapefruit sized mass was resected in the area of amputation but some of the malignancy remained. There is no medical evidence before us that a single blow to an area has ever caused, or could be expected to cause, liposarcoma to grow or spread. We are simply unable to reasonably infer from a door hinge striking appellant's arm one time and a hard knot appearing several weeks later that amputation some four months afterwards was causally related to the injury received.

The testimony of Dr. McGown is helpful to us in understanding this case:

Number one, trauma—we use the word loosely, but it is an inclusive term. Trauma can be a single act, it can be a repeated thing, it can be caused by a blow, it can be caused, as he said, by sunlight, it can be caused by x-ray, it can be caused by repeated irritation of some sort. And we do know that certain cancers can be stimulated by repeated trauma of a sort. It's been, you know, speculated that smoking, which is a form of chemical trauma, causes lung cancer. Skin cancer is aggravated by sunlight. It may be caused by it. Certain tumors of the tongue by various poor fitting dental appliances of a repeated nature. Burns on the skin can cause cancer that can affect the soft tissues as well. Radiation exposure can cause cancer. So these are the types of trauma that we associate with, because most of us have seen enough cancers develop in areas that this has happened. And experimentally, there are a number of cancers that are caused by—particularly in animals, rats and so forth—by using various drugs, chemicals and this sort.

As to the relationship of trauma—when you say a single blow to a given area, this—I don't think many physicians would accept the fact that a single blow is capable of causing cancer.

* * *

As I indicated earlier, I think, you know, people will have a tumor that's been sitting there for a long time and it has been of a certain size, and then for some reason or other they noticed it growing. And frequently they will call attention to the fact that some injury or something had called their attention to that. The best analogy that I could give you is—you really don't know how many times a day you hit your thumb until you have a sore thumb, and then it seems like you are hitting it every five minutes. You know, you are not aware of it until you have something that calls your attention to it. And I think this is frequently true of nodules

of any sort, particularly if there is any pain associated with them—that if you injure that area and then suddenly notice that the thing is not the same size it was when you last examined it.

Recently in *Edwards v. Pettit Construction Company, Inc., supra,* we restated the well-established rule that:

While a finding of fact of the commission will normally be upheld, such a finding may not be based upon surmise, conjecture, or speculation, but must be founded on evidence of sufficient substance to afford a reasonable basis for it. *Wynn v. Peoples Natural Gas Company,* 238 S. C. 1, 118 S. E. (2d) 812 (1961).
257 S. E. (2d) at 755.

All the evidence—medical, lay and circumstantial—does not give rise to a reasonable inference of causation. Finding no competent evidence to support a causal connection, we accordingly affirm.

Affirmed.

LITTLEJOHN, NESS and HARWELL, JJ., concur.

LEWIS, C. J., dissents.

LEWIS, Chief Justice (dissenting):

The majority opinion correctly states the issue to be: Whether there is any evidence to support the Commission's finding that appellant's injury aggravated his pre-existing disease or cancer known as liposarcoma.

The circumstances surrounding the injury support the award in this case. In April 1974, a malignant lump was removed from appellant's left shoulder. He was subsequently given cobalt treatments, after which the doctor concluded that the cancer was in a state of remission. Appellant returned to his job and worked without further recurrence of the cancer until April 1975 when he received an injury to went to the doctor but he was not in his office. He returned

his left shoulder. Soreness, redness, and swelling immediately developed where the trauma was received. Appellant to work and about three weeks later a "hard knot" developed on his arm where he had been previously injured. Later, on August 13, 1975, he was examined by doctors at the Veteran's Administration Hospital, resulting in the amputation of his left arm and shoulder.

In my opinion, the foregoing facts give rise to a reasonable inference that the accidental injury aggravated appellant's pre-existing condition. The majority opinion states: "There is no medical evidence before us that a single blow to an area has ever caused, or could be expected to cause, liposarcoma to grow or spread." This statement can be made for the record because the medical testimony is all to the effect that the doctors did not know the cause of cancer.

There is, however, medical testimony in this record as to the "possible" traumatic aggravation of appellant's cancerous condition. Certainly, there is medical testimony upon which the conclusion could be drawn that the cancer was in a state of remission. Appellant had worked at his job for approximately one year after his initial treatments for his condition, without apparent recurrence. Recurrence occurred immediately after the trauma to the shoulder.

Application of the principles set forth in *Grice v. Dickerson, Inc.,* 241 S. C. 225, 127 S. E. (2d) 722, to the facts of this case justifies affirmance of the award of the Commission.

Ignorance of medical science as to the cause of cancer should not deprive appellant of the benefit of the reasonable inference, ordinarily indulged, that there was a causal connection between the injury and the immediate aggravation of his disease.

I would reverse the judgment and reinstate the award of the Commission.