**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Mary Hickman, Employee, Appellant,

v.

Ruiz Foods, Employer, and Safety National Casualty Corporation c/o York Risk Services Group, Carrier, Respondents.

Appellate Case No. 2019-001944

———————

Appeal From The Workers' Compensation Commission

———————

Unpublished Opinion No. 2023-UP-223
Submitted November 1, 2022 – Filed June 7, 2023

———————

**REVERSED AND REMANDED**

———————

Dwight Christopher Moore, of Moore Law Firm, LLC, of Sumter, for Appellant.

Helen F. Hiser, of McAngus Goudelock & Courie, LLC, of Mount Pleasant, for Respondents.

———————

**PER CURIAM:** On August 22, 2016, Mary Hickman fell at work and sustained injuries to her head, arm, knee, leg, and back. After receiving medical care for two years for these injuries through workers' compensation, she filed a Form 50 asking

for additional medical care and treatment, as well as a finding of temporary total disability benefits. Her employer denied the claim, asserting her current medical condition was not related to her work accident. After a hearing, the single commissioner found Hickman was at maximum medical improvement, was not entitled to further medical care, and had failed to prove her current condition was caused by her accident. After review, the appellate panel affirmed as modified the single commissioner's order, changing some of the findings of fact but none of the conclusions of law.[1] We reverse the denial of compensation to Hickman and remand for an award of temporary total disability benefits and continued medical treatment.

**I**.

Hickman, a forty-nine-year-old mother of seven, worked in the bakery at Ruiz Foods, stacking tortillas on a conveyer belt for nine hours a day. On August 22, 2016, she was walking to the front of the tortilla machine to remove clogged dough when she slipped in a puddle of oil and water, falling hard onto the concrete floor— and knocking her arm and head on some trays on the way down. Hickman went to the ER, where her knee and elbow x-rays showed no broken bones but did show a small joint effusion to her knee.

The next day, Hickman was evaluated at McLeod Occupational Health where she was prescribed prescription-strength ibuprofen and assigned to restricted duty at work. Over the following months, Hickman began a course of physical therapy for her arm and knee injuries. She reported that, while her symptoms from these injuries did improve, her knee popped occasionally and she continued to experience back pain. In December 2016, Hickman returned to regular duty at work. In early January 2017, Hickman's doctor at McLeod Occupational Health, Dr. Brooks, noted Hickman's back pain had not improved with physical therapy and ordered an MRI. On January 18, 2017, Hickman returned to the ER, this time reporting acute back pain radiating down her right leg. The next week, she underwent the MRI Dr. Brooks had ordered, and it showed a bulging disc at L5-S1. In her follow-up to the MRI at McLeod Occupational Health, Dr. Brooks noted, "[Hickman] has been working regular duty by toughing it out." As a result of the MRI findings, Dr. Brooks referred Hickman to an orthopedist. Hickman was evaluated by the

---

[1] The appellate panel's order stated "affirmed in part and reversed in part." However, we are convinced this was a scrivener's error because the result of the order was to affirm the single commissioner's ruling as modified. Like the single commissioner, the appellate panel did not award Hickman any medical treatment or disability benefits.

orthopedist, Dr. Boyd, at Lexington Brain and Spine Institute.  After examining Hickman, Dr. Boyd noted:

> Low back and RIGHT leg pain in her lower radicular pattern.  She states this has occurred since her described work injury.  She exhibits quite a bit of pain and Waddell signs.  Her MRI scan does show a facet effusion on the RIGHT at L5-S1.

Dr. Boyd did not think Hickman was a surgical candidate and referred her to a pain management specialist.  Dr. Boyd wrote Hickman's employer a note, stating she should not return to work until evaluated by pain management.  Dr. Storick, the pain management specialist, evaluated Hickman in May 2017, noting the date of her onset of pain was August 22, 2016, and the symptoms had been continuous since onset.  Dr. Storick noted, "[Hickman's] right knee is better and only bothers her every now and then."  He also noted "[Hickman] denies any pre-existing history of back problems[;]" however, "medical records reviewed from her [primary care physician] indicated chronic back pain in 2013."  Noting her previous physical therapy was limited to her shoulder and knee, Dr. Storick prescribed Hickman four more weeks of physical therapy; this time focusing on back symptoms and stated, "I would expect she should be at maximum medical improvement when she completes physical therapy."  Dr. Storick believed Hickman would likely be able to return to work as a tortilla stacker at Ruiz Foodss after her physical therapy but assigned her work status as sedentary duty until follow-up.

On June 20, 2017, Dr. Storick again evaluated Hickman, this time finding that, while she appeared substantially better after physical therapy, her back periodically bothered her and her knee was still popping every few days.  Dr. Storick assigned Hickman a "2% whole person impairment lumbar spine based on the low pain and lumbar spondylosis" and indicated she may need to see an orthopedist regarding the popping in her right knee.  Dr. Storick returned Hickman to regular duty status at work.

On September 28, 2017, per Ruiz Foods's request, Hickman underwent an independent medical evaluation by orthopedist Dr. Willie S. Edwards, whose note stated:

> [Hickman] was felt to be at maximum medical improvement by Dr. Storick on June 20, 2017 and was felt by him to have no specific need for restrictions for her back.  He opined that she had a 2% whole person

> impairment of her body related to her low back injury. She denies any previous problems related to her spine. Her continued pain has been localized in the low back area radiating to the right leg though she admits that her knee has improved . . . [Hickman] does not appear to be at maximum medical improvement. A new MRI scan should probably be obtained to determine if any localized treatment at L4-5 on the right side could be offered such as an epidural steroid injection.

Per Dr. Edwards' order, Hickman underwent another MRI in October 2017, showing a substantial change in the condition of her back. Significantly, the new MRI showed a bulging disc at L3-4 and some instability at L4-5.

In February 2018, Dr. Edwards prescribed Hickman a brace and epidural injections to help with her pain. On March 15, 2018, Hickman still had not received any epidural injections, and Dr. Edwards wrote a note stating, "We would still like for her to receive an L4-5 epidural when authorized by her workers comp. I would like her to remain out of work until she follows up 2 weeks after injection." Hickman received her first (and only) injection on April 18, 2018.

In June 2018, Hickman filed a Form 50 claim for temporary total disability benefits because she had been out of work from Ruiz Foods since Dr. Edwards took her out of work on March 15, 2018. She also claimed she needed continued medical treatment for the injuries sustained on August 22, 2016 to her right knee, back, right forearm, elbow, and head.

On July 10, 2018, Hickman underwent another independent medical evaluation, this time with Dr. Forrest at the Southeastern Spine Institute. Dr. Forrest's note described Hickman's patient history, stating:

> Prior to the injury 08/22/16, Ms. Hickman recalls having a couple episodes of low back pain. By her recollection, the symptoms she had in the past before this accident were primarily in the middle part of the low back and not the right side or right buttock. She recalls having had an injection procedure done in approximately 2013. She does not recall any other treatment that was needed. She relates that, prior to the incident 08/22/16, she was asymptomatic and working 8 to 10 hours per day.

Dr. Forrest opined that, to a reasonable degree of medical certainty, Hickman's current back pain was caused by the August 22, 2016 accident at work and she was not at maximal medical improvement—and may even need surgery to resolve her pain. Dr. Forrest concluded his note by stating Hickman should remain out of work until receiving further treatment for pain, including a series of epidural injections. Ten days later, Ruiz Foods filed a Form 51, admitting Hickman sustained "right knee, back, right forearm, elbow, [and] head" injuries on August 22, 2016, but denying that her current condition was related to the August 22, 2016 work accident.

In August 2018, Dr. Forrest filled out a Form 14B Physician's Statement for the worker's compensation commission, opining: Hickman was not at maximum medical improvement; Hickman had a 14% medical impairment to her "low back and SI joint"; and Hickman should continue to receive medical treatment for her injuries, including injections or surgery. Dr. Forrest also opined, as a result of Hickman's accident, Hickman was "disabled from meaningful gainful employment."

In preparation for the hearing, Ruiz Foods collected Hickman's pre-accident medical records and deposed Dr. Edwards. Hickman's medical records revealed that, in 2001 and 2005, she reported to the ER with low back pain, and, in 2012 and 2013, Hickman's primary care doctor treated her for back pain. During Dr. Edwards' deposition, he stated he did not believe Hickman was at maximum medical improvement. He also noted there was substantial change in her back condition between January 2017 and October 2017, as depicted by the two MRIs. When asked what could cause Hickman's back's worsening condition, Dr. Edwards explained there was no way to tell with any degree of medical certainty whether the evolution from inflammation to instability in her back was "arthritic, traumatic, or stress related." Dr. Edwards testified that, when examining her, Hickman denied any back pain prior to her August 22, 2016 accident, but that, even if she did have chronic back pain in 2001, 2005, and 2012-2013, this earlier pain did not make it more or less likely that her August 22, 2016 accident caused her current condition, since "the presence of a preexisting condition, whether it's symptomatic or not, can be made symptomatic by an industrial injury." Dr. Edwards stated he would agree "within a reasonable degree of medical certainty, L4-L5, that particular disc area was injured by a trauma caused by the fall[.]"[2] Dr. Edwards admitted the only way to determine whether a traumatic event caused the onset of pain is to rely on the patient's own description of the onset of pain; however, he later stated that, in Hickman's case, "based on the patient history and the findings on that initial MRI scan that there was a traumatic event, and for the absence of any other causative event, it would be my

_____

[2] A pre-accident MRI showed problems to a different area of Hickman's spine.

opinion that that would be most likely a significant factor in the production of symptoms in that area."

At the hearing on Hickman's claim for temporary total disability benefits and continued treatment, Ruiz Foods admitted Hickman sustained injuries to her head, shoulder, knee, and back on August 22, 2016. However, Ruiz Foods claimed that, according to Dr. Storick, Hickman had reached maximum medical improvement for those injuries on June 20, 2017. Ruiz Foods then stated that, according to Dr. Edwards' deposition testimony, it could not be proven that the deterioration of Hickman's back condition—as observed between the January 2017 and October 2017 MRIs—was caused by the August 22, 2016 accident and not the natural progression of prior injuries or age. Ruiz Foods asked the commissioner to give more weight to Dr. Edwards' testimony regarding Hickman's injuries than to Dr. Forrest's 14% impairment rating, stating Dr. Edwards was a spinal surgeon and Dr. Forrest was merely an orthopedist. Finally, Ruiz Foods asked the commissioner to find Hickman was not a credible claimant.

Hickman testified regarding her August 22, 2016 accident and previous medical history. Hickman explained she had been involved in car accidents in both 2001 and 2015, and that, in 2011 or 2012, she hurt her back one time while bending over to pick up her house key from under her door mat. Hickman explained she had received an epidural injection after that earlier back injury, and it had resolved by the time of her August 22, 2016 accident at work. Hickman testified that, as a result of her August 22, 2016 accident, she was still having trouble with her knee popping occasionally, and she could not lift her shoulder all the way. Hickman testified she was still experiencing sharp and throbbing pain in her back, explaining that, when she went from light/sedentary duty back to regular duty at work, her back pain got much worse. Hickman asserted her shoulder and knee pain had not resolved, and her back pain "never did stop." Hickman testified the epidural injection she had received in 2018 helped with the pain running down her leg, but the pain came back.

The single commissioner denied Hickman's claim, finding Hickman was not credible or truthful. The single commissioner found none of Hickman's doctors mentioned any non-back injuries in their notes, but Ruiz Foods admitted Hickman sustained an injury on August 22, 2016, to her back, and, as to that injury, "maximum medical improvement was reached as of Dr. Edwards' last medical report on September 28, 2017." The single commissioner found Dr. Boyd's and Dr. Edwards' opinions should be given greater weight than Dr. Forrest's opinion and, by the greater weight of the evidence, "[a]ll issues currently suffered by the Claimant are not related to the workers compensation case of August 22, 2016."

The single commissioner ruled Hickman suffered a compensable injury only to her back on August 22, 2016, but: 1) she had reached maximum medical improvement for her back; 2) she had received all appropriate medical treatment for the back injury; and 3) she failed to meet her burden of proof that her current back condition was related to the accident sustained on August 22, 2016. Hickman was not awarded any further medical treatment or temporary total disability benefits. Hickman appealed, and after a hearing, the appellate panel issued an order substantially adopting the commission's conclusions of law but modifying the single commissioner's factual findings. This appeal follows.

## II.

The court of appeals must affirm the factual findings of the worker's compensation commission if they are supported by substantial evidence. S.C. Code Ann. § 1-23-380(5) (Supp. 2022); *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 132–33, 276 S.E.2d 304, 305 (1981). However, "[t]he court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions" are affected by an error of law or are "[c]learly erroneous in view of the reliable, probative and substantial evidence on the whole record." § 1-23-380(5).

*Continued Medical Treatment for Back Injury with Radiating Leg Pain*

Under the South Carolina Workers' Compensation Act, an employer is not liable to provide continued medical care to an employee injured at work for a period greater than ten weeks after the date of injury unless the commission determines additional medical treatment will "tend to lessen the period of disability as evidenced by expert medical evidence stated to a reasonable degree of medical certainty." S.C. Code Ann. § 42-15-60(A) (2015). Because § 42-15-60 refers to "disability" and makes no reference to maximum medical improvement, whether an employee is at maximum medical improvement has no bearing on the determination of whether the employer is liable to provide medical treatment beyond the ten-week time period. *Dodge v. Bruccoli, Clark, Layman, Inc.*, 334 S.C. 574, 581, 514 S.E.2d 593, 596 (Ct. App. 1999). Under workers compensation law, "[m]aximum medical improvement is a term used to indicate that a person has reached such a plateau that in the physician's opinion there is no further medical care or treatment which will lessen the degree of impairment." *O'Banner v. Westinghouse Elec. Corp.*, 319 S.C. 24, 28, 459 S.E.2d 324, 327 (Ct. App. 1995). "[T]he fact a claimant has reached maximum medical improvement does not preclude a finding the claimant still may require additional medical care or treatment[, because, while] medical care or treatment may not reduce the claimant's degree of physical impairment, it may 'tend to lessen the period of

disability.'" *Dodge*, 334 S.C. at 581, 514 S.E.2d at 596–97 (quoting § 42-15-60(A)). "'Disability'" is defined in the South Carolina Workers' Compensation Act as the 'incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.'" *Id*. at 580, 514 S.E.2d at 596 (quoting S.C. Code Ann. § 42-1-120 (2015)).

We find the commission erred as a matter of law in concluding Hickman is not entitled to continued medical treatment for her back injury with radiating leg pain. First, whether Hickman reached maximum medical improvement as to the injury is not dispositive of whether she is entitled to continued medical treatment under § 42-15-60. *See id.* at 581, 514 S.E.2d at 596–97 ("The fact a claimant has reached maximum medical improvement does not preclude a finding the claimant still may require additional medical care or treatment[, because, while] medical care or treatment may not reduce the claimant's degree of physical impairment, it may 'tend to lessen the period of disability.'" (quoting § 42-15-60)). Rather, the inquiry as to whether continued medical treatment is appropriate turns on whether the treatment will tend to lessen her period of disability. Accordingly, to the extent the commission found she was not entitled to continued medical treatment because she reached maximum medical improvement, this was error.

Next, all objective medical evidence, including two MRIs and two independent medical evaluations, demonstrate Hickman's back condition with radiating leg pain was real and ongoing at the time of her hearing. Therefore, to the extent the commission found Hickman was not entitled to continued medical treatment for her injuries because her testimony regarding current pain was not believable, this was error. *See Crane v. Raber's Discount Tire Rack*, 429 S.C. 636, 646, 842 S.E.2d 349 354 (2020) (finding employee's credibility could not be a proper basis for deciding whether employee was injured or disabled when all objective medical evidence relevant to those facts demonstrated he was).

Causation is also not a reason to deny benefits here. There is no dispute Hickman injured her back on August 22, 2016, and there is no dispute Hickman's back condition was preventing her from working as a tortilla stacker at the time of her hearing. Furthermore, there is no evidence in the record indicating an interruption in the causal chain from the August 22, 2016 injury to the disability experienced in 2018. *Tims v. J.D. Kitts Const.*, 393 S.C. 496, 504, 713 S.E.2d 340, 344 (Ct. App. 2011) ("Every natural consequence that flows from a work-related compensable injury is also compensable unless the consequence is the result of an independent, intervening cause sufficient to break the chain of causation."). Accordingly, Hickman was entitled to compensation in 2018 for the back injury with radiating leg pain she sustained in August 2016. *See Turner v. SAIIA Constr.*, 419 S.C. 98, 105,

796 S.E.2d 150, 154 (Ct. App. 2016) ("An injury arises out of employment if it is proximately caused by the employment."); *Owings v. Anderson Cnty. Sheriff's Dep't*, 315 S.C. 297, 299, 433 S.E.2d 869, 871 (1993) ("An injury arises out of employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal relationship between the conditions under which the work is to be performed and the resulting injury."); *cf. Frampton v. S.C. Dep't of Nat. Res.*, 432 S.C. 247, 262–63, 851 S.E.2d 714, 722–23 (Ct. App. 2020) (finding claimant failed to prove he was entitled to compensation for initial work-related spine injury, when claimant had seen doctor for exact same injury six months before he was allegedly injured at work).

Finally, there is no evidence in the record to support the conclusion that Hickman's period of disability would not be shortened by continued medical treatment. Rather, all evidence indicates Hickman was told by her doctors that, as of March 15, 2018, Hickman was unable to work as a tortilla stacker until her back and radiating leg pain were treated, either by surgery or epidural injections. Accordingly, we remand the case for an award of continuing medical treatment for Hickman's back injury with radiating leg pain. *See Dodge*, 334 S.C. at 583–84, 514 S.E.2d at 598 (finding there was a question of fact as to whether the claimant was entitled to continued medical treatment when treatment meant the difference between the claimant "being able to work and not being able to work" and remanding the issue to the worker's compensation commission for consideration).

*Continued Medical Treatment for Non-Back Injuries*

The single commissioner's order states, "Based on the greater weight of the evidence by all doctors including her IME doctor, there is no mention of injuries to [Hickman's] head, right forearm or should[er], right knee, or right leg." The order then states, "Pursuant to S.C. Code Ann. § 42-1-160, [Hickman] sustained an admitted injury by accident to her back on or about August 22, 2016," and Hickman "suffered a compensable injury to only her back for which she received all appropriate medical treatment."

However, Ruiz Foods admitted, both in its Form 51 and at the hearing in front of the single commissioner, that Hickman injured her "right knee, back, right forearm, elbow, head" during the August 22, 2016 accident. Moreover, every one of Hickman's doctors discussed her non-back injuries in their notes. Accordingly, the single commissioner's finding and conclusions as to Hickman's non-back injuries are patently contradicted by the record. *See Burnette v. City of Greenville*, 401 S.C. 417, 427–28, 737 S.E.2d 200, 206 (Ct. App. 2012) ("[W]hile a finding of fact of the [c]ommission will normally be upheld, such a finding may not be based upon

surmise, conjecture, or speculation, but must be founded on evidence of sufficient substance to afford a reasonable basis for it." (quoting *Edwards v. Pettit Constr. Co., Inc.*, 273 S.C. 576, 579, 257 S.E.2d 754, 755 (1979))).

The appellate panel recognized this error and changed the single commissioner's finding regarding the non-back injuries to state: "Based on the greater weight of the evidence from all doctors including [Hickman's] IME doctor, any injury to the head, right forearm or shoulder, right knee, or right leg resolved." The appellate panel did not, however, change the single commissioner's corresponding conclusion of law. Instead, the appellate panel adopted the single commissioner's exact wording from the conclusion section of his order, which stated: "[Hickman] suffered a compensable injury to only her back for which she received all appropriate medical treatment." This was an error: the appellate panel's conclusion that Hickman injured only her back on August 22, 2016, is not supported by the record or its own finding of fact. Because the medical evidence, Ruiz Foods's own admissions, and the appellate panel's factual finding indicate Hickman injured her "right knee, back, right forearm, elbow, head" on August 22, 2016, there is no question Hickman's non-back injuries are compensable under the workers' compensation act. *See* S.C. Code Ann. § 42-1-160 (2015) (defining injury by accident); *Jennings v. Chambers Dev. Co.*, 335 S.C. 249, 254–55, 516 S.E.2d 453, 456 (Ct. App. 1999) ("For an injury to be compensable, it must be by accident arising out of and in the course of employment. . . . 'An injury arises out of employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal relationship between the conditions under which the work is to be performed and the resulting injury.'" (quoting *Clade v. Champion Lab*, 330 S.C. 8, 11, 496 S.E.2d 865, 857 (1998))).

Because the non-back injuries are compensable injuries as defined by § 42-1-160, the appellate panel was required to determine whether Hickman was entitled to further medical treatment for those injuries as claimed in her Form 50. *See* § 42-15-60(A) (providing employer is liable for continued medical treatment if it will lessen period of employee's disability due to injury). We hold the appellate panel's finding that Hickman's non-back injuries, particularly those to her knee, had "resolved" by the time of the hearing in front of the commissioner is not supported by substantial evidence in the record, nor is it an adequate disposition regarding whether she is entitled to further medical treatment. *See Dodge*, 334 S.C. at 581, 514 S.E.2d at 596 (holding the fact a claimant has reached maximum medical improvement does not preclude a finding the claimant still may require additional medical care or treatment to lessen period of disability); *Lark*, 276 S.C. at 136, 276 S.E.2d at 307 ("The substantial evidence rule, prescribed in the statute, means that [an appellate court] will not overturn a finding of fact by an administrative agency

'unless there is no reasonable probability that the facts could be as related by a witness upon whose testimony the finding was based.'" (quoting *Independent Stave Co. v. Fulton*, 476 S.W.2d 792, 793 (Ark. 1972))). While there is scant evidence in the record regarding the necessity for ongoing treatment to Hickman's shoulder, head, and arm injuries, she testified at the hearing that her knee was still popping in pain. Regardless of whether Hickman's own testimony was credible, her doctors provided statements that Hickman's knee injury was, in fact, not resolved. On June 20, 2017, a month after his May 2017 note stating Hickman's knee injury was better, Dr. Storick stated that, while he believed Hickman was close to maximum medical improvement for her back injury—she "may need to see an orthopedist regarding the popping and pain in the right knee." Dr. Edwards' September 28, 2017 note only stated Hickman's knee injury/pain had "improved," not that it had "resolved." Thus, there is not substantial evidence to support the full commission's finding that Hickman's knee injury was "resolved," and we remand to the commission for an award of continued medical treatment for this injury.

*Temporary Total Disability Benefits*

"When the incapacity for work resulting from an injury is total, the employer shall pay, or cause to be paid, as provided in this chapter, to the injured employee during the total disability a weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages[.]" S.C. Code Ann. § 42-9-10(A) (2015). Payments for temporary total disability cease when an employee is able to return to work or has reached maximum medical improvement. S.C. Code Ann. § 42-9-260 (B), (D) (2015). "The rationale for ceasing temporary benefits upon a finding of [maximum medical improvement] is to permit entry of a permanent award." *Smith v. SC Dep't of Mental Health*, 335 S.C. 396, 399, 517 S.E.2d 694, 695 (1999). "Clearly, if an employee has reached [maximum medical improvement] and remains disabled, then his injury is permanent[; t]his is precisely the reason to terminate temporary benefits in favor of permanent benefits upon a finding of [maximum medical improvement]." *Id*. at 399, 517 S.E.2d at 695–96.

There is no dispute that, as of March 15, 2018, Hickman was unable to work as a tortilla stacker until her back and radiating leg pain were treated, either by surgery or epidural injections. Furthermore, the commission's finding that Hickman is at maximum medical improvement for her back injury is not supported by the record. Dr. Edwards' September 28, 2017 note, which the single commissioner and the appellate panel cited as the basis for their conclusion, contradicts this finding. The September 28, 2017 note states: "[Hickman] does not appear to be at maximum medical improvement. A new MRI scan should probably be obtained to determine if any localized treatment at L4-5 on the right side could be offered such as an

epidural steroid injection."  Dr. Edwards repeated this opinion in his deposition testimony.  Accordingly, we remand this case for an award of temporary total disability benefits. *See* S.C. Code Ann. § 42-9-260 (2015) (providing employer may pay portion of wages when employee is out of work due to total temporary disability resulting from injury until the date employee has returned to work or reached maximum medical improvement, or if more than 150 days have passed since the date the injury was reported, until the commission "provide[s] by regulation the method and procedure by which benefits may be suspended or terminated for any cause"); *Burnette*, 401 S.C. at 427–28, 737 S.E.2d at 206 ("[W]hile a finding of fact of the [c]ommission will normally be upheld, such a finding may not be based upon surmise, conjecture, or speculation, but must be founded on evidence of sufficient substance to afford a reasonable basis for it." (quoting *Edwards*, 273 S.C. at 579, 257 S.E.2d at 755)).

In light of our disposition of the case at this time, it is not necessary for this court to address any remaining issues. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating appellate court need not address remaining issues when disposition of prior issue is dispositive).

**REVERSED AND REMANDED.**[3]

**GEATHERS and MCDONALD, JJ., and HILL, A.J., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.