737 S.E.2d 200

Kellie N. BURNETTE, Appellant,

v.

CITY OF GREENVILLE and Hewitt Coleman
& Associates, Respondents.

Appellate Case No. 2011–198006.

No. 5059.

Court of Appeals of South Carolina.

Heard Oct. 29, 2012.
Decided Dec. 5, 2012.
Rehearing Denied Jan. 25, 2013.

418

Douglas A. Churdar, of Greenville, for Appellant.

Michael Allen Farry and David Alan Wilson, both of Horton Drawdy Ward Mullinax & Farry, PA, of Greenville, for Respondents.

CURETON, A.J.

Kellie N. Burnette appeals the circuit court's order affirming the decision of the Workers' Compensation Commission (Commission). Burnette argues the circuit court erred in affirming because the evidence in the record does not support the Commission's findings that (1) Burnette did not injure her lower back in her June 2007 incident, (2) Burnette is not

permanently and totally disabled, and (3) Burnette's testimony was not credible. We reverse as to the June 2007 injury to Burnette's lower back, remand to the Commission for the entry of findings of fact concerning the lumbar injury and Burnette's disability rating, and decline to address the issue of credibility.

## FACTS

### I. First Injury and 2004 MRI

After becoming a police officer for the City of Greenville (City [1]) in 2001, Burnette suffered two work-related injuries. On August 23, 2003, she was driving a patrol car when a fleeing suspect in a stolen car collided with the driver's side in a "t-bone" accident. Burnette suffered a broken nose and injuries down her left side to her ankle, including her neck and lower back. In addition to surgery to repair her nose, Burnette received two months of physical therapy but continued experiencing chronic lower back pain. After the incident, she experienced continuing pain localized to her mid- and lower back. Although she was rated as having a 17.5% disability to her back, Burnette returned to work to full duty.

On June 21, 2004, Burnette began seeing Dr. Kopera for pain management. Dr. Kopera reviewed an MRI taken May 11, 2004, which he deemed normal. On August 19, 2004, Dr. Kopera determined Burnette had reached maximum medical improvement (MMI) but had a 5% permanent impairment to her lumbar spine. He noted Burnette presented with lower back pain but "no radicular symptoms," rated her pain at a 7 out of 10, and displayed excellent range of motion at the waist. During the course of treating Burnette, Dr. Kopera found chronic pain or tenderness in the lumbar region that by 2006 had moved to the thoracic region. He believed the pain was largely myofascial in nature. In April 2006, Dr. Kopera prescribed physical therapy for Burnette, which helped. She continued seeing Dr. Kopera until 2007, when he closed his practice and referred her to Dr. Satterthwaite.

During the summer of 2005, Burnette also saw Dr. Schwartz for pain management. Dr. Schwartz noted she presented with

---

1. This term also collectively references the City of Greenville and its insurance administrator, Hewitt Coleman & Associates.

pain in her lower back, neck, interscapular area, and thoraco-lumbar region. He supplemented Burnette's oral pain medications with injections. On August 23, 2005, Dr. Schwartz opined Burnette had reached MMI from her 2003 injuries but had a permanent spinal impairment of 13%, which consisted of an 8% lumbar impairment and a 5% cervical impairment.

## II. Second Injury and Medical Retirement

On June 16, 2007, Burnette attempted to wrestle a suspect out of a car while her partner unsuccessfully tried to tase the suspect. With Burnette partially inside the vehicle, the suspect drove forward. First dragged by the car and then thrown from it, Burnette landed against a curb and felt a shock in her neck, head, and lower back. Burnette began missing work and was placed on light duty. Ten months later, on April 17, 2008, the South Carolina Retirement System placed Burnette on disability retirement from the police force with a recommendation that she be examined again in three years.

On August 28, 2007, Burnette began seeing Dr. Satterthwaite and his staff. She reported pain in the thoracic and lumbar regions that started after the 2003 car wreck. The treatment notes from Burnette's first visit indicate Dr. Hutcheson of that office reviewed her 2004 MRI and recorded seeing minimal disk bulges without stenosis at L4–5 and L5–S1. In early September 2007, Burnette reported neck and lower back pain she rated at 9 out of 10. Two weeks later, she rated the pain at 8. Dr. Satterthwaite noted Burnette had suffered "an injury in June where she hurt her neck" and that the "[c]urrent increased neck pain seem[ed] to have been [aggravated] by an injury in June when she was jerked by a car trying to leave the scene."

In October 2007, Dr. Satterthwaite examined Burnette with an eye toward making recommendations to the City's workers' compensation insurance administrator. At that time, Burnette rated her pain at 6 out of 10 but noted the pain increased when she sat or stood for long periods or entered or exited a car. In response to his question whether she might apply for a secretarial job, Burnette told Dr. Satterthwaite she was "not interested in a desk job but [did] state that she ha[d]

applied for [a] teaching position, which would not require her to wear the vest and belt and [would] allow her to change positions frequently from standing to sitting." Noting the workers' compensation adjuster had asked him to define work restrictions for Burnette, Dr. Satterthwaite stated:

She is currently working unrestricted. She does not want significant restrictions that would place her at a desk job or remove her from her job completely. She does feel that she would benefit from limitations to standing and sitting to one hour at a time without rest breaks. She was on her feet working last weekend for several hours, and that was quite uncomfortable to both her neck and back.

She has applied for [a] teaching position, which sounds ideal for her. I would strongly recommend that she be seriously considered for that position as I think she is a dedicated officer and wishes to continue working in law enforcement. It would also be good to get her out of the patrol car so that she does not have to use it for long periods with poor back support and get in and out of the vehicle. The belt and vest are quite heavy and do alter her posture with sitting and standing, increasing problems with her spinal alignment and the potential for increasing her neck and back pain.

## III. 2008 MRI and Neck Surgery

Burnette did not get the teaching job, but her pain rating remained relatively stable at 7 out of 10 until February 2008, when it reached 8. In January 2008, Burnette underwent an MRI of her lumbar spine, which showed a minimal central disk protrusion without stenosis or impingement at L5–S1. A few days later, Dr. Satterthwaite's nurse practitioner noted Burnette had a herniated disk at L5–S 1 and lumbar radiculopathy. In March 2008, rating her pain with medication at 5 out of 10, Burnette was experiencing spasms in her back. Dr. Satterthwaite's nurse practitioner referred her to physical therapy, noted they were "still awaiting approval for treatment of [the] neck," and indicated Burnette needed a sedentary job because she was unable to continue in her present position. A series of epidural steroid injections followed from March through September 2008. On September 15, 2008, Dr. Satterthwaite noted Burnette was suffering from increased back and leg pain. Despite receiving a pain injection two

weeks earlier, on October 1, 2008, Burnette rated her pain at 9.

On October 27, 2008, Dr. Bucci performed a cervical laminectomy on Burnette, fusing together her C4 and C5 vertebrae. Following surgery, her neck pain improved, but her back pain did not. From March to May 2009, her overall pain rating decreased from 8 to 6.

Dr. Bucci assessed Burnette's postsurgical condition twice. First, on April 3, 2009, he completed a Physician's Statement for the Workers' Compensation Commission. In that document, he noted he had last seen Burnette on March 24, 2009, and she sustained a 10% medical impairment to her cervical spine. In addition, he released her to return to work without restriction.

On August 6, 2009, Dr. Bucci revised his medical opinion when he filled out a more detailed questionnaire for Burnette's counsel. He stated Burnette suffered a 28% "permanent impairment . . . to the whole person as a result of her cervical spine injury of 6/16/07." He also acknowledged that when he completed the Physician's Statement, he was unaware of Burnette's disability retirement, 2003 lumbar spine injury, ongoing treatment for pain and depression/anxiety, or her limitations resulting from those conditions. Dr. Bucci concluded Burnette was not able to return to work without restriction.

In the meantime, on June 22, 2009, Dr. Satterthwaite completed a workers' compensation questionnaire stating Burnette had reached MMI with regard to her June 16, 2007 injuries. He assigned her a 72% impairment of the cervical spine, which translated to a 25% whole person impairment. In his treatment notes from July 1, 2009, he added that Burnette also had a 16% permanent impairment of the lumbar spine, which corresponded to a 12% whole person impairment. At that visit, Burnette rated her pain at 6 but complained it was in her neck, left arm to palm, back, and right leg.

## IV. Workers' Compensation Claim

Burnette filed a Form 50, seeking total permanent disability for injuries to her neck, upper and lower back, and psyche from the June 2007 incident. The City admitted her neck and upper back injuries but denied her claims of injuries to the

lower back and psyche. The City maintained Burnette had received medical treatment, had reached MMI, and needed no further care for injuries sustained in the June 2007 incident.

The parties submitted extensive medical and psychological records[2] for the single commissioner's consideration. In addition, Burnette supported her claims with opinions and reports from her treating physicians and Benson Hecker, Ph.D., an expert in vocational rehabilitation who evaluated her employment prospects. Dr. Hecker concluded Burnette would be "unable to perform any substantial gainful work activity which exists in significant numbers in open competition with others."

### A. Hearing Testimony regarding Injuries

On September 3, 2009, the parties tried their case before the single commissioner. At that hearing, Burnette testified to the rigors and unpredictability of working as a police officer. She recalled wearing a uniform, duty belt, and bullet-proof vest that together weighed approximately twenty-five pounds. According to Burnette, an officer's duties were physically demanding and "would vary from day to day, hour to hour." Burnette testified that after the August 2003 incident, she experienced pain in her middle and lower back and pain that radiated into her arms. At the time of the hearing, she claimed her pain went from her neck to her buttocks and, at times, radiated downward through a nerve into her leg.

Burnette also testified to suffering from depression. In addition, she claimed she experienced anxiety when riding in vehicles or being in crowds. She stated she could sit or stand comfortably for approximately twenty to thirty minutes at a time and could alternate sitting and standing for up to three hours at a time. Not only would pain prevent her from kneeling or walking more than a couple of blocks, she testified she had difficulty bending at the waist, twisting her back, squatting, or stooping.

### B. Hearing Testimony regarding the Boat Cover Incident

On cross examination, Burnette acknowledged reporting to her doctors an incident that occurred in July 2009 when she

---

2. A component of Burnette's care with Dr. Satterthwaite was psychological care from Dr. Tollison and his staff.

and her friend were towing her parents' boat from Columbia to Greenville. According to the doctor's notes, Burnette "re-cite[d] an incident on the weekend in which the sun cover on the boat flew off and she and a friend had to pick it up and put it in their truck. Tuesday she start[ed] having increased lower back pain that radiates to her left and into her but-tocks." Burnette stated the notes were incorrect, in that the boat belonged to her parents and the "cover" that blew off was a cushion.

Burnette further explained that the cover blew off the boat and flew onto the highway, clipping the corner of the car behind her. After Burnette pulled off the highway, her friend retrieved the cover from the road, and the two women "pushed it up in the truck." According to Burnette, her increased pain started while she was watering flowers on Tuesday following the Saturday incident.

## C. Procedure and Appeals

On October 14, 2009, the single commissioner issued her order awarding Burnette seventy-five weeks of benefits for a 25% permanent partial disability to the spine.

She found the June 2007 incident resulted in injuries to Burnette's neck and upper back with psychological overlay. However, she also found the "greater weight of the evidence" did not support Burnette's claim of an injury to her lower back.

The single commissioner examined Burnette's 2004 and 2008 MRIs and found the latter showed "only a 'minimal' protru-sion with no nerve root displacement or impingement, and comparatively, no greater pathology of any significance (if any) than the MRI of 2004...."[3] In addition, the single commissioner accepted without question Dr. Satterthwaite's June 22, 2009 statement that Burnette had reached MMI from her cervical injury and awarded benefits based upon his determination of a 25% whole person impairment correspond-ing to the cervical spine injury. However, she ignored his contemporaneous determination of a 12% whole person im-pairment corresponding to the lumbar spine injury. Instead,

---

3. The record does not reflect that any physician expressed this opinion.

the single commissioner found that "if [Burnette] aggravated her low back condition in the accident in issue, the aggravation was temporary, and her condition returned to baseline or is the result of an intervening accident," referring to either an unspecified event "in late 2008" or the boat cover incident.

She further stated she "strongly believe[d]" Burnette had "exaggerated her condition to various providers and to the undersigned in order to 'maximize' her case/award." Moreover, she stated Burnette struck her "as someone who simply [did] not wish to work (medical evidence as a whole; testimony of [Burnette], including but not limited to the issue of the amount of her monthly police disability income vis-à-vis her average weekly wage)." The single commissioner found Burnette was "conversant with various levels of the spine by name," but she dismissed much of Burnette's testimony as being "liberally laced with exaggeration." Four out of twenty-four findings of fact relied at least in part on Burnette's interaction with her parents' boat.

Both before and after the issuance of this order, Burnette sought leave to submit additional medical records in response to the boat cover incident. The single commissioner denied her motions.

On April 1, 2010, the Commission entered an order affirming and adopting verbatim the single commissioner's order. Burnette appealed to the circuit court, which affirmed in a modified Form 4 order. She then filed a motion to alter or amend the judgment, which was denied. This appeal followed.

**STANDARD OF REVIEW**

■ The Administrative Procedures Act ("APA") provides the standard for judicial review of decisions by the Commission. *Pierre v. Seaside Farms, Inc.*, 386 S.C. 534, 540, 689 S.E.2d 615, 618 (2010); *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 133–34, 276 S.E.2d 304, 306 (1981). Under the APA, this court can reverse or modify the decision of the Commission if the substantial rights of the appellant have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. S.C.Code Ann. § 1–23–380(5)(d), (e) (Supp.2011); *Transp. Ins. Co. v. S.C. Second Injury Fund*, 389 S.C. 422, 427, 699 S.E.2d 687, 689–90 (2010).

The Commission is the ultimate factfinder in workers' compensation cases. *Shealy v. Aiken Cnty.*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). As a general rule, this court must affirm the findings of fact made by the Commission if they are supported by substantial evidence. *Pierre*, 386 S.C. at 540, 689 S.E.2d at 618. "Substantial evidence is that evidence which, in considering the record as a whole, would allow reasonable minds to reach the conclusion the Commission reached." *Hill v. Eagle Motor Lines*, 373 S.C. 422, 436, 645 S.E.2d 424, 431 (2007). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent the Commission's finding from being supported by substantial evidence." *Id.*

## LAW/ANALYSIS

### I. Injury to Lower Back

First, Burnette asserts substantial evidence does not support the finding she did not injure her lower back in the June 2007 incident. We agree.

■ An injured employee "who has a permanent physical impairment or preexisting condition" may receive benefits for a subsequent work-related disability if he establishes by a preponderance of the evidence that "the subsequent injury aggravated the preexisting condition or permanent physical impairment." S.C.Code Ann. § 42–9–35 (Supp.2011); *see also Mullinax v. Winn–Dixie Stores, Inc.*, 318 S.C. 431, 436–37, 458 S.E.2d 76, 79 (Ct.App.1995) (recognizing the "natural consequences flowing from a compensable injury, absent an independent intervening cause, are compensable," as well as the aggravation of "a [preexisting] condition, infirmity, or disease" by a work-related injury). Nonetheless, "an employee who suffers a subsequent injury which affects a single body part or member injury set forth in Section 42–9–30 is limited to the recovery set forth in that section." § 42–9–35.

■ Although medical evidence "is entitled to great respect," the Commission is not bound by the opinions of medical experts and may disregard medical evidence in favor of other competent evidence in the record. *Potter v. Spartanburg Sch. Dist. 7*, 395 S.C. 17, 23, 716 S.E.2d 123, 126 (Ct.App.2011). However, "[w]hile a finding of fact of the

[C]ommission will normally be upheld, such a finding may not be based upon surmise, conjecture, or speculation, but must be founded on evidence of sufficient substance to afford a reasonable basis for it." *Edwards v. Pettit Constr. Co., Inc.*, 273 S.C. 576, 579, 257 S.E.2d 754, 755 (1979); *see also Grayson v. Carter Rhoad Furniture*, 317 S.C. 306, 309–10, 454 S.E.2d 320, 322 (1995) (affirming reversal of Commission's decision, which was supported by no evidence in the record).

We find the circuit court erred in affirming findings of fact that were unsupported by substantial evidence in the record. Particularly disturbing is the finding that the 2008 MRI showed "only a 'minimal' protrusion with no nerve root displacement or impingement, and comparatively, no greater pathology of any significance (if any) than the MRI of 2004...." Because no evidence indicates this opinion originated from a medical provider, yet it appears in the single commissioner's order, we are forced to conclude it is the medical opinion of the single commissioner, adopted by the Commission.

Moreover, we find substantial evidence in the record does not support the Commission's findings that Burnette neither injured nor aggravated a preexisting injury to her lower back, or that any such injury or aggravation either "returned to baseline" or resulted from an independent intervening accident. *See Potter*, 395 S.C. at 23, 716 S.E.2d at 126 (permitting the Commission to disregard medical evidence only when other competent evidence exists in the record); *Edwards*, 273 S.C. at 579, 257 S.E.2d at 755 (holding a finding of fact by the Commission "may not be based upon surmise, conjecture, or speculation, but must be founded on evidence of sufficient substance to afford a reasonable basis for it"). The record contains Burnette's medical records and testimony, as well as written opinions by her treating physicians and a vocational rehabilitation expert. We find no evidence that challenges the conclusions of Burnette's doctors concerning her herniated disk at L5–S1, lower back pain, or development of radiculopathy. As a result, the record provides little or no support for the findings of the Commission holding that Burnette neither injured nor aggravated a prior injury to her lower back in the 2007 incident. Consequently, the circuit

court erred in affirming the Commission's factual findings concerning the existence, exacerbation, and possible causes of Burnette's lower back injury.

We reverse the circuit court's decision and remand this issue to the Commission. On remand, we specifically instruct the Commission to reconsider this issue and enter findings of fact concerning Burnette's lumbar injury that are supported by substantial evidence in the record.

## II. Permanent and Total Disability

Next, considering the combined effects of her preexisting impairments with the injuries sustained in the June 2007 incident, Burnette argues substantial evidence does not support the finding that she is not permanently and totally disabled. We remand this issue as discussed below.

In a workers' compensation case, this court does not have the authority to find facts; that authority belongs to the Commission. *Sigmon v. Dayco Corp.*, 316 S.C. 260, 262, 449 S.E.2d 497, 498 (Ct.App.1994). Moreover, the determination of an injured employee's impairment rating is more art than science, involving the consideration of evidence the Commission may gather from the injured employee, medical and vocational experts, and lay witnesses:

> While an impairment rating may not rest on surmise, speculation or conjecture ... it is not necessary that the percentage of disability or loss of use be shown with mathematical exactness....
>
> Further, the [Commission] is not bound by the opinion of medical experts and may find a degree of disability different from that suggested by expert testimony. Expert medical testimony is merely intended to aid the [Commission] in coming to the correct conclusion. Unless the question of the extent of partial loss of use under [section] 42–9–30 is so technically complicated as to require exclusively expert testimony, lay testimony is admissible.

*Sanders v. MeadWestvaco Corp.*, 371 S.C. 284, 291–92, 638 S.E.2d 66, 70 (Ct.App.2006) (citations and quotation marks omitted).

Any conclusion as to the degree or permanency of Burnette's disability must take into consideration her preexisting impairments, as well as factual findings not yet made with regard to her lumbar spine. In view of our determination that substantial evidence does not support the Commission's denial of a 2007 injury or aggravation of a prior injury to Burnette's lumbar spine, we remand this issue to the Commission for (1) the entry of findings of fact concerning the extent of Burnette's lumbar injury or aggravation, (2) a determination of the medical treatment or other benefits to which Burnette may be entitled for her lumbar injury or aggravation, and (3) a recalculation of Burnette's disability rating in view of the injury to the lumbar spine.

## III. Credibility

Finally, Burnette contends the Commission's findings concerning her credibility are neither material nor supported by substantial evidence. Because our decisions on the two prior issues are dispositive of this appeal, we decline to reach this issue. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## CONCLUSION

We conclude the Commission's findings holding Burnette neither injured nor aggravated a prior injury to her lower back in the 2007 incident are not supported by substantial evidence. Consequently, we reverse the circuit court's decision affirming the Commission on this issue. Furthermore, we remand this issue to the Commission with instructions to reconsider this issue and enter findings of fact concerning Burnette's lumbar injury that are supported by substantial evidence in the record.

We further conclude the recognition of an injury or aggravation to an injury to Burnette's lower back affects the extent and permanency of Burnette's disability. Accordingly, we remand this issue to the Commission for reconsideration.

Because our determinations of the two other issues dispose of this appeal, we do not address the issue of credibility.

**REVERSED AND REMANDED.**

SHORT and LOCKEMY, JJ., concur.