# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Chisolm Frampton, Employee, Appellant,

v.

S.C. Department of Natural Resources, Employer, and
S.C. State Accident Fund, Carrier, Respondents.

Appellate Case No. 2017-001764

Appeal From The Workers' Compensation Commission

Opinion No. 5726
Heard September 19, 2019 – Filed May 13, 2020

**AFFIRMED**

John C. Land, III, of Land Parker Welch, LLC, of
Manning, for Appellant.

Kirsten Leslie Barr, of Trask & Howell, LLC, of Mount
Pleasant, for Respondent.

**HILL, J.:** In this workers' compensation case, the single commissioner found claimant Chisholm Frampton failed to meet his burden of proof under S.C. Code Ann. § 42-9-35 (2015) to show his subsequent, on-the-job injury aggravated his preexisting neck condition. Nevertheless, the single commissioner found because the Department of Natural Resources (DNR) admitted the claim and provided medical treatment, Frampton was entitled to benefits for a 20% permanent partial disability to his spine. The appellate panel reversed, finding the single commissioner's conclusion that Frampton did not meet his burden of proof under § 42-9-35 was correct and, because it was not appealed, was the law of the case. The

appellate panel therefore concluded Frampton was not entitled to benefits as a matter of law. Frampton now appeals the appellate panel's reversal of the single commissioner's award, arguing (1) the appellate panel erred in requiring him to prove a compensable injury to his spine after DNR admitted liability, and (2) the single commissioner erred by considering Frampton's return to work and subsequent promotions in determining his impairment rating. Because the appellate panel's decision is supported by substantial evidence, we affirm.

## I. Factual and Procedural Background

On September 4, 2010, Frampton experienced neck pain and stiffness after riding in a pickup truck across a bumpy dove field he and another DNR officer were inspecting. He reported the incident to his supervisor and went to Doctor's Care three days later. The notes from that visit indicated Frampton was diagnosed with cervical and trapezius strains and that workers' compensation paid for the visit. Frampton was released back to work the same day with the restriction of "no overhead lifting." He went back to Doctor's Care ten days later for a follow-up visit, after which he was released to work full duty.

On March 15, 2011, Frampton saw a neurosurgeon, Dr. Byron Bailey, who examined him for ongoing neck and arm pain. Frampton testified he was referred by workers' compensation to Dr. Bailey because his neck condition had not improved since the September 4, 2010 accident. Dr. Bailey's medical records, however, indicated he had treated Frampton before the dove field incident and was "following [Frampton] for cervical radiculopathy"[1] and described Frampton as having symptoms of neck pain and right arm numbness that had "progressed from the study that was done approximately a year ago." The next day, Frampton underwent a series of tests whereby Dr. Bailey determined he would require spinal surgery. Dr. Bailey performed a cervical discectomy and fusion on March 21, 2011, and continued to see Frampton for follow-up visits. Frampton returned to work on May 1, 2011, but was restricted to light duty for another several weeks.

In June 2011, Frampton was involved in a serious car accident. He saw Dr. Bailey

---

[1]"Cervical radiculopathy is a disease process marked by nerve compression from herniated disk material or arthritic bone spurs. This impingement typically produces neck and radiating arm pain or numbness, sensory deficits, or motor dysfunction in the neck and upper extremities." Eubanks, *Cervical Radiculopathy: Nonoperative Management of Neck Pain and Radicular Symptoms*, 81 American Family Physician 33 (2010).

soon after for a previously scheduled appointment and reported experiencing aggravation of his neck pain. Dr. Bailey determined Frampton likely developed a cervical strain as a result of the car accident and prescribed a number of medications and physical therapy. Frampton continued to see Dr. Bailey periodically for neck pain up until the hearing.

On September 20, 2013, Dr. Bailey completed a Form 14B, stating Frampton reached maximum medical improvement (MMI) on April 17, 2013, listing his diagnosis as cervical spondylosis, and assigning him a 20% impairment rating to the cervical spine. However, Dr. Bailey later revised the form to assign Frampton a 75% impairment rating to the cervical spine and a 26% whole person impairment rating.

On November 17, 2014, Frampton filed a Form 50 seeking total permanent disability benefits for the injury to his neck and right arm allegedly sustained during the dove field accident. He denied any prior permanent disability.

In its Form 51 Answer to Request for Hearing, DNR stated, "It is [a]dmitted the employee sustained an injury or illness on or about the date set forth in the Form 50." However, DNR (1) denied any injury to Frampton's right arm, (2) denied Frampton needed or was entitled to additional medical care as a result of any work-related injury, and (3) claimed Frampton reinjured his cervical spine during his June 2011 car accident and was currently being treated for that injury. In its prehearing brief, DNR again denied Frampton was permanently and totally disabled in light of his ability to continue working without restriction and reiterated its argument that the car accident was a subsequent, intervening accident. DNR did not, however, cite § 42-9-35 as a specific defense in its Form 51 or prehearing brief.

Before the single commissioner, Frampton testified he was working full time but had some limitations in what he was physically able to do. Frampton asserted he had no limitations or disability in his neck before the September 4, 2010 accident. He believed he had lost at least 75% use of his neck because of his ongoing pain and his limited movement; however, he confirmed he was not taking any medications at that time for his neck.

Frampton testified he did not recall seeing Dr. Bailey before the September 4, 2010 dove field incident or having problems in his neck or arm before the incident and that he believed workers' compensation paid for the surgery. However, none of Dr. Bailey's medical records reference a work-related injury on September 4, 2010, and some list Frampton's state health plan as the insurer. DNR also submitted records from Dr. Bailey dated March 6, 2010, in which he noted Frampton had a history of cervical radiculopathy and reported numbness in his arm beginning approximately

three weeks prior. On cross-examination, Frampton acknowledged he would not have gone to see Dr. Bailey back in March 2010 and had an MRI scan of his neck if he was not having neck pain at that time, and he agreed that on the intake forms, he characterized his symptoms as having begun gradually over a number of years. Frampton also acknowledged he never mentioned the September 4, 2010 dove field incident when asked to describe his injuries to Dr. Bailey.

Frampton urged the single commissioner to find that he lost more than 50% use of his back and, therefore, there was a rebuttable presumption that he had a permanent and total disability. *See* S.C. Code Ann. § 42-9-30(21) (2015). "[S]ection 42-9-30(21) states there is a rebuttable presumption of [permanent and total disability] when a claimant has 50% or more loss of use of the back." *Watson v. Xtra Mile Driver Training, Inc.*, 399 S.C. 455, 464, 732 S.E.2d 190, 195 (Ct. App. 2012).

DNR argued Frampton's injury resulting from the dove field incident was merely a cervical strain and Frampton failed to meet his burden to prove he aggravated his preexisting neck condition as a result of the accident pursuant to § 42-9-35. DNR also argued the June 2011 car accident was a subsequent, intervening accident, breaking any existing chain of causation between the dove field accident and Claimant's injury, relying on *Geathers v. 3V, Inc.*, 371 S.C. 570, 579–80, 641 S.E.2d 29, 34 (2007) (holding when an employee with a preexisting but non-disabling prior injury suffers a subsequent, disabling injury that aggravates or activates the preexisting condition, compensability is limited to the second injury, not the first).

The single commissioner found Frampton was not permanently and totally disabled, but had sustained 20% permanent partial disability to his spine as a result of his September 4, 2010 dove field work-related injury based on the evidence as a whole, including Dr. Bailey's original Form 14B assigning Frampton a 20% impairment rating to the cervical spine. The single commissioner found Claimant's testimony regarding the extent of his preexisting neck injury was not credible and Claimant suffered from preexisting neck pain and right arm numbness before his alleged work injury, citing Dr. Bailey's medical records predating the dove field incident. The single commissioner further found there was no medical evidence the dove field incident aggravated or exacerbated his preexisting neck condition for which he was already receiving treatment by Dr. Bailey, and she specifically concluded Frampton did not meet his burden of proof under § 42-9-35. However, she awarded Frampton disability benefits because she found DNR admitted the claim and provided medical treatment. As to the June 16, 2011 car accident, the single commissioner determined it was not a superseding, intervening act that broke the chain of causation, finding *Geathers* inapplicable.

In its order reversing the single commissioner, the appellate panel found the single commissioner correctly determined Frampton did not meet his burden of proof under § 42-9-35, that finding was the law of the case, and Frampton was therefore not entitled to disability benefits.

## II. Standard of Review

The Administrative Procedures Act (APA) provides a reviewing court "may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."  S.C. Code Ann. § 1-23-380(5)(e) (Supp. 2019); *see also Gadson v. Mikasa Corp.*, 368 S.C. 214, 221, 628 S.E.2d 262, 266 (Ct. App. 2006) ("Pursuant to the APA, this court's review is limited to deciding whether the appellate panel's decision is unsupported by substantial evidence or is controlled by some error of law.").  "In workers' compensation cases, the [appellate panel] is the ultimate fact finder.  An appellate court must affirm the findings made by the [appellate panel] if they are supported by substantial evidence." *Holmes v. Nat'l Serv. Indus., Inc.*, 395 S.C. 305, 308, 717 S.E.2d 751, 752 (2011) (citation omitted).  Our supreme court has defined substantial evidence as  "not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but . . . evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action." *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981) (quoting *Laws v. Richland Cty. Sch. Dist. No. 1*, 270 S.C. 492, 495–96, 243 S.E.2d 192, 193 (1978)).  "The final determination of witness credibility and the weight assigned to the evidence is reserved to the appellate panel.  Where there are conflicts in the evidence over a factual issue, the findings of the appellate panel are conclusive." *Houston v. Deloach & Deloach*, 378 S.C. 543, 551, 663 S.E.2d 85, 89 (Ct. App. 2008) (citations omitted).  "Accordingly, a reviewing court may not substitute its judgment for that of the [appellate panel] as to the weight of the evidence on questions of fact." *Clark v. Aiken Cty. Gov't*, 366 S.C. 102, 107, 620 S.E.2d 99, 101 (Ct. App. 2005).

"The claimant has the burden of proving facts that will bring the injury within the workers' compensation law, and such award must not be based on surmise, conjecture or speculation." *Crisp v. SouthCo. Inc.*, 401 S.C. 627, 641, 738 S.E.2d 835, 842 (2013). "Injury" for purposes of workers' compensation means "only injury by accident arising out of and in the course of employment."  S.C. Code Ann. § 42-1-160(A) (2015); *see also Turner v. SAIIA Constr.*, 419 S.C. 98, 105, 796 S.E.2d 150, 154 (Ct. App. 2016) ("For an accidental injury to be compensable, it must "aris[e] out of and in the course of employment." (quoting S.C. Code Ann.

§ 41-1-160(A))).  "An injury arises out of employment if it is proximately caused by the employment."  *Turner*, 419 S.C. at 105, 796 S.E.2d at 154.

### III. Discussion

Frampton argues that, because DNR admitted the injury and paid for some of his treatment with Dr. Bailey, the parties believed the only disputed issue at the hearing before the single commissioner would be the extent of his spinal injury and whether his arms were injured.  Frampton contends DNR did not properly present § 42-9-35 as a defense because it failed to specify the statute as a defense on its Form 51 or in its prehearing brief.  He further contends that, because DNR admitted the injury, he was not on notice he would be required to prove liability.

DNR acknowledges it admitted Frampton suffered an accident involving his cervical spine on its Form 51 but argues it also specifically denied liability for any workers' compensation benefits on the Form and in its prehearing brief.  According to DNR, its admission that Frampton sustained an injury did not absolve him of his burden of proving entitlement to benefits, including his burden under § 42-9-35.  DNR maintains § 42-9-35 is a statutory prerequisite to compensation benefits when there is a preexisting condition, rather than an affirmative defense.  DNR argues it was not aware of Frampton's potential preexisting condition until receiving Frampton's medical records on the eve of the hearing before the single commissioner, at which time it raised the issue of § 42-9-35 without objection.

§ 42-9-35 provides:

> (A) The employee shall establish by a preponderance of the evidence, including medical evidence, that:
>
> > (1) the subsequent injury aggravated the preexisting condition or permanent physical impairment; or
> >
> > (2) the preexisting condition or the permanent physical impairment aggravates the subsequent injury.
>
> (B) The commission may award compensation benefits to an employee who has a permanent physical impairment or preexisting condition and who incurs a subsequent disability from an injury arising out of and in the course of his employment for the resulting disability of the permanent physical impairment or preexisting condition

and the subsequent injury.

*See also Burnette v. City of Greenville*, 401 S.C. 417, 427, 737 S.E.2d 200, 205–06 (Ct. App. 2012) ("An injured employee 'who has a permanent physical impairment or preexisting condition' may receive benefits for a subsequent work-related disability if he establishes by a preponderance of the evidence that 'the subsequent injury aggravated the preexisting condition or permanent physical impairment.'" (quoting S.C. Code Ann. § 42-9-35)). "The claimant's right to compensation for aggravation of a preexisting condition arises when the claimant has a dormant condition that becomes disabling because of the aggravating injury." *Murphy v. Owens Corning*, 393 S.C. 77, 86, 710 S.E.2d 454, 458 (Ct. App. 2011).

Although DNR did not raise the issue of whether Frampton met his burden under § 42-9-35 in its Form 51 or prehearing brief, DNR was not on notice of Frampton's preexisting neck injury until obtaining Dr. Bailey's March 2010 medical records shortly before the hearing before the single commissioner. Furthermore, Frampton did not object to DNR raising this issue at the hearing. *See Holroyd v. Requa*, 361 S.C. 43, 60, 603 S.E.2d 417, 426 (Ct. App. 2004) ("Failure to object to the introduction of evidence at the time the evidence is offered constitutes a waiver of the right to have the issue considered on appeal."). DNR's initial provision of treatment for Frampton's injury does not estop it from later contesting liability under these circumstances. *See Dozier v. Am. Red Cross*, 411 S.C. 274, 292–93, 768 S.E.2d 222, 231–32 (Ct. App. 2014) (holding employer did not waive its right to contest the compensability of the claimant's injury by providing treatment for 728 days and explaining a finding of waiver would discourage employers from providing treatment). Moreover, although DNR admitted an injury to Frampton's neck on its Form 51, it consistently denied he was entitled to benefits.

There is substantial evidence supporting the appellate panel's decision. *See Gadson*, 368 S.C. at 221, 628 S.E.2d at 266 ("Pursuant to the APA, this Court's review is limited to deciding whether the appellate panel's decision is unsupported by substantial evidence or is controlled by some error of law."). Dr. Bailey's medical records from March 2010 and Frampton's own testimony demonstrate he had a preexisting neck condition (cervical radiculopathy) at least six months before the dove field incident. Section 42-9-35 provides a claimant "shall establish by a preponderance of the evidence" a subsequent work-related injury aggravated a preexisting condition. Frampton did not prove the dove field incident aggravated his preexisting neck condition and only referenced the existence of the preexisting condition when DNR presented him with Dr. Bailey's medical records at the hearing.

Nonetheless, even if Frampton had met his burden pursuant to § 42-9-35, he did not

show his neck injury was proximately caused by the dove field accident pursuant to § 41-1-160(A). *See Crisp*, 401 S.C. at 641, 738 S.E.2d at 842 ("The claimant has the burden of proving facts that will bring the injury within the workers' compensation law, and such award must not be based on surmise, conjecture or speculation."); *see also Turner*, 419 S.C. at 105, 796 S.E.2d at 154 ("For an accidental injury to be compensable, it must 'aris[e] out of and in the course of employment.'"(quoting S.C. Code Ann. § 41-1-160(A))); *id.* ("An injury arises out of employment if it is proximately caused by the employment."). None of Dr. Bailey's medical records mention the dove field incident. This, taken with the fact that Frampton had already seen Dr. Bailey at least six months before the incident for the same injury, is substantial evidence supporting the appellate panel's conclusion that Frampton's treatment with Dr. Bailey, including his surgery, was not causally related to the dove field incident but was part of a long-term, ongoing course of treatment for Frampton's progressive, degenerative, disc disease, which had begun years prior. This conclusion is consistent with Frampton's own testimony before the single commissioner that he told Dr. Bailey his symptoms began gradually over a number of years and with Dr. Bailey's notes from the March 2010 visit in which he stated Frampton had a history of cervical radiculopathy.

Finally, we reject Frampton's argument that the single commissioner erroneously considered his post-injury return to work and subsequent promotions in estimating the percentage of his impairment. This issue is unpreserved for this court's review because Frampton failed to raise it before the appellate panel, and the appellate panel made no ruling on it. *See Robbins v. Walgreens & Broadspire Servs., Inc.*, 375 S.C. 259, 266, 652 S.E.2d 90, 94 (Ct. App. 2007) (an issue not raised to the single commissioner or appellate panel is not appropriate for appellate review); *see also Harbin v. Owens-Corning Fiberglas*, 316 S.C. 423, 428, 450 S.E.2d 112, 115 (Ct. App. 1994) (arguments not raised to the appellate panel or circuit court are not preserved for appeal). Nevertheless, it is clear from the single commissioner's order that she only considered Frampton's return to work, subsequent promotions, and earning capacity in the context of determining the lack of credibility of Dr. Bailey's revised Form 14B and in determining Claimant was not entitled to benefits under S.C. Code Ann. § 42-9-10 (2015), which is not at issue.

**AFFIRMED.**

**KONDUROS, J., concurs.**

**LOCKEMY, C.J., concurs in part and dissents in part.**

**LOCKEMY, C.J., concurring in part and dissenting in part:** I concur in part and respectfully dissent in part. I concur with the majority's finding that the single commissioner did not err by considering Frampton's post-injury return to work and subsequent promotion in determining he was not entitled to benefits under section 42-9-10. However, I would reverse the appellate panel's conclusion Frampton failed to satisfy his burden of proof under section 42-9-35 and was therefore not entitled to any benefits under the Workers' Compensation Act.

Frampton contends the appellate panel erred by requiring him to prove a compensable injury to his spine when DNR admitted liability for an injury to the cervical spine. I agree. "An appellate court may reverse a decision by the Appellate Panel if it is affected by an error of law or is clearly erroneous in view of the substantial evidence." *Harrison v. Owen Steel Co.*, 422 S.C. 132, 137, 810 S.E.2d 433, 435 (Ct. App. 2018).

Here, Frampton alleged in his Form 50 that he suffered an injury to his neck and right arm when he was riding in a pickup truck through a dove field in September of 2010. In its Form 51, DNR admitted that Frampton sustained an injury on the date he alleged, and it stated it admitted "an injury to the cervical spine only" but denied the extent of the injury and all other body parts, including the arms. DNR denied Frampton was entitled to additional medical care for the injury because he suffered a subsequent injury to the cervical spine on June 16, 2011. In my view, by admitting an injury to the cervical spine, DNR agreed Frampton injured his spine as alleged in his Form 50. In addition, Frampton had been under a neurosurgeon's care for several years before he filed his Form 50, and DNR had paid for much of this treatment. The neurosurgeon completed a "physician's statement" describing his assessment of Frampton's "work related injury." All of this occurred before DNR filed its Form 51 admitting injury to Frampton's cervical spine. Further, in its Form 58, DNR argued the injury Frampton suffered in the June 2011 car accident either (1) aggravated his preexisting neck condition or (2) was a subsequent, intervening accident that severed the causal relationship between the September 4, 2010 accident and the alleged disability.

The single commissioner found as a fact that, although Frampton failed to satisfy his burden of proof under section 42-9-35, DNR admitted the claim and provided medical treatment. The single commissioner found Frampton suffered a 20% permanent partial disability to his back as a result of his work injury. The appellate panel did not disturb the single commissioner's finding that DNR admitted the claim, and none of DNR's grounds for appeal from the single commissioner's order charged her with error in finding the claim was admitted.

In my opinion, DNR admitted the September 4, 2010 injury to Frampton's spine, and the only disputed issues at the hearing before the single commissioner were the extent of the injury and whether the arms were affected. Because this was an admitted case, I would hold the appellate panel erred by concluding that, pursuant to section 42-9-35, Frampton was required to prove that either the September 4, 2010 injury aggravated his preexisting condition or the preexisting condition aggravated the injury. I would therefore reverse the appellate panel's holding that Frampton was not entitled to any benefits under the Workers' Compensation Act.

Further, I believe the appellate panel misapplied the law of the case doctrine. "It is a fundamental rule of law that an appellate court will affirm a ruling by a lower court if the offended party does not challenge that ruling." *Lindsay v. Lindsay*, 328 S.C. 329, 338, 491 S.E.2d 583, 588 (Ct. App. 1997). "Failure to challenge the ruling 'is an abandonment of the issue and precludes consideration on appeal.'" *Id.* (quoting *Biales v. Young*, 315 S.C. 166, 168, 432 S.E.2d 482, 484 (1993)). "The unchallenged ruling, 'right or wrong, is the law of the case and requires affirmance.'" *Id.* (quoting *Buckner v. Preferred Mut. Ins. Co.*, 255 S.C. 159, 161, 177 S.E.2d 544, 544 (1970)). Here, notwithstanding the single commissioner determined Frampton failed to meet his burden of proof pursuant to 42-9-35, she ruled in his favor on this issue, finding DNR admitted the claim. Without expressly addressing this finding, the appellate panel relied on the law of the case doctrine to affirm the single commissioner's conclusion that Frampton failed to satisfy his burden of proof under section 42-9-35. However, there was no reason for Frampton to appeal the single commissioner's ruling as to section 42-9-35 because he prevailed on the issue. Therefore, I believe the law of the case doctrine did not apply and the appellate panel erred by relying on this doctrine to support its holding.

For the foregoing reasons, I respectfully dissent from the majority opinion and would reverse the appellate panel in part.