**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Qushon Inman, Appellant-Respondent,

v.

GE Healthcare, Inc., Employer, and Riverstone International Ins., Carrier, Respondents-Appellants.

Appellate Case No. 2024-001766

Appeal From The Workers' Compensation Commission

Unpublished Opinion No. 2026-UP-319
Heard February 5, 2026 – Filed June 24, 2026

**AFFIRMED**

Stephen J. Wukela, of Wukela Law Firm, of Florence, for Appellant/Respondent.

Nicolas L. Haigler and Meredith Ann Krzyston, of Robinson Gray Stepp & Lafitte, LLC, of Columbia, for Respondents/Appellants.

**PER CURIAM:** In this cross-appeal from the Appellate Panel of the Workers' Compensation Commission, Qushon Inman argues the single commissioner and Appellate Panel erred in denying his claim that he sustained a compensable injury by accident to his back and in rejecting his assertion that this injury aggravated a

preexisting condition. GE Healthcare, Inc. and its insurer (collectively, GE) argue the Appellate Panel erred in affirming the portion of the single commissioner's order overruling their evidentiary objections and allowing into evidence a belated causation opinion from an improper second deposition of Inman's treating orthopedic surgeon. We affirm the denial of compensation.

**Facts and Procedural History**

In 2018, Inman began working at GE through a temp agency until GE hired him in January 2021. During the hiring process, on December 24, 2020, Inman completed a GE medical questionnaire inquiring about past or current health issues, including back problems. Inman denied current back pain or problems and indicated:

> I understand that any false answers or statements made by me on this form will be sufficient grounds for immediate discharge if I am employed, for refusal of employment if I have not yet started work, and will make me ineligible for any and all Company benefits, including but not limited to medical and life insurance.

On December 26, 2020, Inman presented to McLeod Regional Medical Center with a chief complaint of "lower back pain onset 1 1/2 months ago after exercising, pain to bend or twist." Inman described this as "a stabbing pain in his lower back and left leg" and rated the pain "a 10/10 in severity."

On March 19, 2021, Inman "felt a sharp pain in his back radiating to his legs and arms" when he "jump[ed] from the trailer of an 18-wheeler to the dock in the shipping department."

On March 22, 2021, Inman presented to the GE medical clinic and reported that he "hurt his back some months ago. He referenced December 2020. He did not know a specific event or what day he could have hurt his back. On March 23, Inman presented to MUSC Florence (MUSCF) with complaints of "lower back pain that started last [Friday], states it shoots down both legs and up his back, pain started at work." Inman noted he "might have jumped off a truck wrong." He described the onset quality as gradual and reported having "similar pain" in December 2020, which has been "on and off since." MUSCF referred Inman to orthopedic surgeon Gregory Palutsis and placed him out of work for three days.

Inman returned to MUSCF on March 24 with a chief complaint of "lower lumbar pain that is radiating down his left leg to his calf but not past his calf. He states when he sits up he also has some pain in his inguinal regions." Inman was diagnosed with "acute left lumbar radiculopathy (primary)" and "left hip pain." He received two injections and was placed out of work until April 2, 2021. Inman again presented to MUSCF on March 29 with complaints of "left lower back pain with radiation to the left lower leg for several months."

On April 1, 2021, Inman was evaluated by Christopher Huiet, PA-C of McLeod Orthopedics Florence. According to a progress note,

> On March 19, patient jumped out of an 18 wheeler at work and noticed immediate onset of pain radiating from the upper back to lower back and throughout the lower extremities. More recently has complained of increased pain involving both lower extremities. Lower extremity pain [ ] is described as sharp and is associated with intermittent numbness and tingling throughout multiple toes of the feet. Denies previous history of axial spine trauma. He reports history of lower back spasms which began on December 23. He was evaluated on the 26th and CT scan of lumbar spine was obtained. Patient states his symptoms 100% resolved after a few days. No further complaints. Patient rates his pain at a 10 on a visual analog scale. Previous CT scan of the abdomen and pelvis from December 26, 2021 shows no definitive acute bony changes and L5-S1 disc degenerative changes.

PA Huiet ordered an MRI of Inman's lumbar and thoracic spine, which revealed:

> At L4-5, moderate disc bulge extends into the lateral recesses. Small left central disc extrusion borders the posterior aspect [with] the L5 ventral body measuring approximately 0.6 cm transverse and traversing inferiorly just beyond the margin of the superior endplate of L5. Mild right neural foraminal narrowing. Central canal patent. Facet hypertrophy.

> At L5-Sl, moderate circumferential disc bulge with superimposed left central disc protrusion. This narrows the central canal with mass effect on the traversing central left S1 nerve root. Mild bilateral neural foraminal narrowing. Facet hypertrophy with a small amount of fluid in both facet joints.

When Inman returned four days later for review of the MRIs, PA Huiet placed him out of work indefinitely and referred him to Dr. Bruce Johnson and Dr. William Edwards, both of McLeod Spine Center.

At Dr. Edwards's initial June 22, 2021 evaluation, Inman reported neck pain radiating to both shoulders that began on March 19, 2021, when he jumped from an 18-wheeler onto a loading dock and felt a sharp pain in his neck. He denied radicular discomfort or prior neck issues but reported "some previous back issues." After reviewing Inman's cervical, thoracic, and lumbar MRIs, Dr. Edwards continued his out-of-work status and noted:

> Patient has perplexing symptoms that seem out of proportion to MRI findings. He describes difficulty ambulating and appears to be legitimately having difficulty with his ambulation. I have recommended formal neurologic evaluation. At this point in time would not recommend any surgical management though he does have disc protrusion at C5-6. Follow up after neurology evaluation. Tramadol given for pain.

On October 26, 2021, Inman returned to McLeod Spine Center for follow-up, and Dr. Edwards referred him to physical therapy. Dr. Edwards next evaluated Inman on February 17, 2022; the follow-up progress note states:

> Patient presents low back pain and non-dermatomal symptoms in both legs. This began after a work-related injury in March of 2021. He relates that he is currently in physical therapy that he believes is not helping. He also complains of having trouble holding his bladder beginning about a month ago. [He] underwent a nerve examination by Dr. Skinner that showed no evidence of nerve damage in left leg. He also complains of frequent headaches and swelling at the base of his neck.

Following a discussion of potential complications, Inman elected to proceed with surgical intervention—"a lumbar discectomy at L5-S1 on the left and probably L4-5." Dr. Edwards noted "reservations due to grossly deconditioned status and psychological component."

In September 2021, Inman's counsel deposed Dr. Edwards. At the conclusion of his direct examination, over opposing counsel's objections—and without being shown the medical reports from December 2020 and March 2021 or the 2020 medical questionnaire Inman completed during his hiring process—Dr. Edwards confirmed causation as to the low back.

On cross-examination, counsel for GE showed Dr. Edwards the March 29, 2021 report in which Inman noted his pain had been ongoing for "several months." Dr. Edwards agreed that this report was inconsistent with an injury on March 19, 2021. He then noted Inman's April 1, 2021 report to PA Huiet that his December 23, 2020 "back spasms" had resolved "100 percent [ ] within a few days" was inconsistent with the December 26, 2020 record from the visit at which Inman reported a 10/10 pain level down his left leg. Dr. Edwards testified that this would not be considered a back spasm and admitted Inman's problems in June 2021 were identical to his presentation to the emergency room in December 2020. Dr. Edwards further acknowledged that it would have been important for him to have this undisclosed information before reaching a causation opinion. He then addressed the medical questionnaire Inman completed just two days before his December 26, 2020 ER visit. After reviewing the previously undisclosed items, Dr. Edwards opined that "based on the records," Inman had not "accurately completed" the questionnaire and agreed that he could not provide a causation opinion.

Counsel for Inman attempted to re-depose Dr. Edwards as to causation in August 2022. However, two different commissioners—in separate orders—expressly prohibited Inman from taking a second deposition. Despite these orders, counsel for Inman met alone with Dr. Edwards to discuss causation. Six days after this meeting, Dr. Edwards provided an opinion letter stating Inman's L5/Sl and L4-5 disc herniation and need for surgery, as well as a C5-6 disc protrusion, were causally related to Inman's "industrial injury."

After unsuccessful motions to exclude Dr. Edwards' letter, GE re-deposed Dr. Edwards. During this second deposition, Dr. Edwards confirmed that neither his prior deposition testimony nor most of the evidence referenced by GE's counsel in that deposition had been provided to him during his October 2022 meeting with

Inman's counsel. However, Dr. Edwards noted Inman's counsel did show him the December 2020 GE medical questionnaire that Inman completed during the hiring process.

GE's counsel also went through the referenced testimony from the initial deposition, and Dr. Edwards confirmed his prior opinions. Yet, Dr. Edwards agreed that Inman's spine pathology from December 2020 "is exactly the same pathology" as that which caused the pain for which Inman later saw him.

Dr. Edwards further testified that Inman sustained an aggravation of a pre-existing lumbar spine condition but noted the documents provided by GE's counsel during his first deposition "filled in a lot of information" that he did not have regarding "the preexisting nature of some of [Inman's] back and leg symptoms." GE's counsel also established:

> Q: The length of time that he had this issue is all different according to these reports; is that fair?
>
> A: It is.
>
> Q: How do we know this isn't just a continuation of his ongoing issues?
>
> A: We really don't except for again, the patient tells me something and I have to rely on that. And—
>
> Q: But can you rely on the patient based on what I've shown you today?
>
> A: It makes it more challenging to do that.

Dr. Edwards agreed that Inman "was not forthcoming" about his medical history and ultimately stated, "I don't think that the symptoms that you've had me review in these records that predated the injury were anything other than the same thing I've been treating him for."

The single commissioner denied compensation, and the parties sought review before the Appellate Panel. The Appellate Panel affirmed the order of the single commissioner denying compensation.

**Law and Analysis**

Inman argues the single commissioner and Appellate Panel erred in failing to find he sustained a compensable injury by accident to his back which aggravated his pre-existing back condition.  We disagree.

"The Appellate Panel is the ultimate fact finder in workers' compensation cases, and if its findings are supported by substantial evidence, it is not within our province to reverse those findings."  *Mungo v. Rental Unif. Serv. of Florence, Inc.*, 383 S.C. 270, 279, 678 S.E.2d 825, 829-30 (Ct. App. 2009).  "An injured employee 'who has a permanent physical impairment or preexisting condition' may receive benefits for a subsequent work-related disability if he establishes by a preponderance of the evidence that 'the subsequent injury aggravated the preexisting condition or permanent physical impairment.'"  *Burnette v. City of Greenville*, 401 S.C. 417, 427, 737 S.E.2d 200, 205–06 (Ct. App. 2012) (quoting S.C. Code Ann. § 42-9-35 (Supp. 2011)).  "In a case brought under section 42-9-35 [of the South Carolina Code], the burden is on the claimant to produce medical evidence to establish a claim for the exacerbation of a preexisting condition."  *Rummage v. BGF Indus.*, 434 S.C. 441, 458, 865 S.E.2d 380, 389 (Ct. App. 2021) (citing § 42-9-35(A) ("The employee shall establish by a preponderance of the evidence, including medical evidence, that: (1) the subsequent injury aggravated the preexisting condition or permanent physical impairment . . . .")).  "As used in this section, 'medical evidence' means expert opinion or testimony stated to a reasonable degree of medical certainty, documents, records, or other material that is offered by a licensed health care provider."  S.C. Code Ann. § 42-9-35(C) (2025).

Inman argues Dr. Edwards' letter and the testimony in his second deposition established that Inman's injuries were the result of an aggravation of his pre-existing condition by a work accident.  He further asserts GE failed to offer contradictory evidence; thus, in his view, Dr. Edwards's testimony carries the day as to compensability.  We disagree.

GE challenges the causation opinion upon which Inman relies because it was not requested of Dr. Edwards in his initial deposition and arose only after a private meeting with Inman's counsel.  GE further asserts—and we agree—that this belated causation testimony came about solely due to the second deposition GE was effectively forced to take to discredit the dubious causation letter.

The single commissioner's findings that Inman did not meet his burden of proof as to either a compensable workplace injury or the aggravation of a pre-existing condition are supported by substantial evidence and were properly affirmed by the Appellate Panel.  Dr. Edwards admitted that Inman has been treated for the same symptoms, rather than the aggravation of a pre-existing condition, since he first presented to McLeod for back pain in December 2020.

Because substantial evidence supports the Appellate Panel's decision that Inman's injury is not compensable, we decline to address the parties' remaining issues.  *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).[1]

**Conclusion**

For the foregoing reasons, the decision of the Appellate Panel is

**AFFIRMED.**

**THOMAS, MCDONALD, and TURNER, JJ., concur.**

---

[1] We likewise decline to further address GE's cross-appeal.  *See id.*